JOSHUA C. STEPHENS, Appellant, *v.* JOHN SANTEE, Respondent.

A transcript of the docket in the office of a county clerk of a judgment purporting to have been rendered by a justice of the peace, with a certified copy of the transcript of the justice, are *prima facie* evidence of the judgment, but not conclusive. It is competent to prove by the testimony and docket of the justice that no such judgment has in fact been rendered.

In an action tried in justices' court by a jury, after the rendition of the verdict and entry thereof in the docket of the justice, the only remaining judicial duty for him to perform is to determine the amount of costs to which the prevailing party is entitled, and add the same to the verdict; the law makes a judgment for this amount the only one that can be entered by him. (2 R. S., 247, § 124.) An entry of judgment for the party prevailing, preceding the statement of the amount, is in no respect the exercise of judicial power, but the performance of a mere ministerial act. An omission, therefore, to make such an entry will not render the entire proceedings a nullity. It may be made by the justice at any time, and will for the purpose of sustaining the proceedings be regarded as made.

One D. made a verbal contract with defendant to cut upon lands in D.'s possession, manufacture and deliver upon the side of the railroad track, 1,000 railroad ties at twelve cents each, to be paid for as the work progressed, the same to be defendant's as soon as cut from the stump; but the ties were to be inspected, and defendant was to take only such as were merchantable and suitable for the intended purpose. D. cut timber sufficient for about 800 ties and drew it upon the lands of C. It was not cut up into ties. Defendant paid upon the contract about the contract-price for 800 ties. After the timber was drawn out, D. pointed it out to defendant, saying "here are your ties." Defendant replied that he wanted them inspected. Subsequently the timber was levied upon and sold upon

an execution against D. *Held*, that the defendant had acquired no title to the timber either under the original contract, as something remained to be done to identify the property embraced in it (*i. e.*, the inspection) or by the subsequent transaction, as defendant did not then accept, but required an inspection; the title, therefore, remained in D., and passed by the levy and sale. The cases of *Van Hoozer* v. *Cory* (34 Barb., 10), and *Conderman* v. *Smith* (41 Barb., 404), distinguished.

(Submitted February 27, 1872; decided March 26, 1872.)

APPEAL from a judgment of the General Term of the Supreme Court in the seventh judicial district, affirming a judgment of the Steuben County Court in favor of defendant, entered upon the report of a referee, and affirming an order of said County Court denying a motion for a new trial. (Reported below, 51 Barb., 532.)

This action is brought to recover for the alleged conversion of a quantity of railroad ties. Plaintiff claimed title under a levy and sale of the property in question, by virtue of an execution against one Charles W. Daniels. Defendant claimed title by purchase of said Daniels prior to the levy and sale.

Plaintiff offered in evidence a certified copy of a transcript in due form of judgment rendered by L. P. Wood, a justice of the peace, in an action wherein Isaac Allison was plaintiff and Charles W. Daniels defendant, for $183.70. Also a transcript in due form showing the filing of transcript and docketing of said judgment in the office of the county clerk of Steuben county. An execution was issued by the county clerk upon said judgment, by virtue of which the ties in question were levied upon as the property of said Daniels and sold. They were purchased by Isaac Allison, who sold and transferred all his interest therein to plaintiff. When the levy was made the timber lay upon the land of one John Crosby. It was subsequently taken and converted by defendant.

Defendant introduced in evidence the justice's docket, containing the proceedings in the action of *Allison* v. *Daniels*. The following is a copy of that portion of the docket showing the proceedings after the jury retired:

" By consent of parties the jury retired without being in

charge of a constable, and brought in a verdict in favor of
the plaintiff and against the defendant, for damages, $175 00

Justice's costs.................................    6 00

Court cost....................................    1 25

Plaintiff's cost................................    1 00

Total ...................................... $183 25

February 3, 1862, trans. given.................    50

"Received the costs in the above suit and notice of appeal,
and two dollars for return for plaintiff.

"L. P. WEED, *J. P.*"

The facts under which defendant claimed title are set forth
sufficiently in the opinion.

The referee found that the proceedings and judgment
before the justice were void, and also the judgment in the
County Court, the execution thereon and the sale by virtue
thereof; that defendant was the owner of the timber in
question, and was entitled to judgment, and judgment was
entered accordingly. The case is reported below. (51 Bar.,
532.)

*John W. Dunning* for the appellant. An entry of the
justice was sufficient to make a valid judgment. (*Hall* v.
*Tuttle*, 6 Hill, 38; *Elwell* v. *McQueen*, 10 Wend., 522;
*Felter* v. *Mulliner*, 2 J., 181.) The transcript was correct,
although not in the exact words of the docket. (*King* v.
*Baker*, 1 East., 186.) This transcript took the place of the
judgment roll. (Code, § 63; *Jackson* v. *Tuttle*, 9 Cow.,
238, 191; *Dickinson* v. *Smith*, 25 Barb., 102; *Lyon* v.
*Manley*, 18 How., 267; *Fish* v. *Emerson*, 44 N. Y., 580.)
The agreement between defendant and Daniels was void by
the statute of frauds. (2 R. S., 134; *Green* v. *Armstrong*, 1
Denio, 550, and cases there cited; *Bank of Lansingburgh*
v. *Crary*, 1 Barb., 542.) No title passed to defendant, as
something remained to be done, and there was no delivery.
(*Field* v. *Moon*, Lalor Sup., 418; *Joice* v. *Adams*, 4 Seld.,

291; *McDonald* v. *Hewitt*, 15 J. R., 349; *Evans* v. *Harris*, 19 Barb., 416, and cases there cited; *Acraman* v. *Morrice*, 8 C. B., 454; *Andrus* v. *Durand*, 11 N. Y., 35; *Johnson* v. *Hunt*, 11 Wend., 137; *Merritt* v. *Johnson*, 7 J. R., 473; *Muchaloo* v. *Mangles*, 1 Taunt., 318.)

*W. B. Jones* for the respondent. The ties were the property of defendant from the time they were cut. (34 Barb., 10; *Condeman* v. *Smith*, 41 Barb., 404; 28 id., 38; 26 id., 138; 4 Seld., 182; 57 Barb., 545.) They were delivered on the 6th of February, 1862. (3 Sand., 230; 19 N. Y., 330.) No valid judgment was rendered by the justice. (2 R. S., 247, § 124; 2 Wait's Law and Practice, 694; 2 Comstock, 134; 6 Hill, 38; 2 Wait's Law and Practice, 696; 51 Barb., 541–543; 3 Denio, 72; 1 Hilton, 52.) And the subsequent proceedings were void. (3 Comstock, 547; 6 Barb., 613; 2 Wait's Law and Practice, 15.)

GROVER, J. The transcript introduced by the appellant was sufficient *prima facie* proof of the judgment. But it was not conclusive. The referee rightly held that it was competent for the respondent to prove, by the docket and testimony of the justice by whom the judgment purported to have been rendered, that no such judgment had ever been recovered. From the docket and testimony it was proved that the suit had been duly commenced before the justice; that the parties appeared, joined issue; that the cause was tried by jury, and a verdict duly rendered for the plaintiff; that the justice immediately entered the same in his docket, and forthwith taxed the plaintiff's costs, and entered the same in his docket and added the same to the verdict, and entered the amount of both in his docket, but failed to enter therein the words, judgment for the plaintiff. Section 110, 2 R. S., 245 provides, that when the jury have agreed upon a verdict they shall deliver the same publicly to the justice, who shall enter the same in his docket. Section 124, id., 247 provides, among other things, that in all cases, when a verdict shall be rendered,

the justice shall forthwith render judgment, and enter the same in his docket. When the verdict has been received and entered by the justice he has no further judicial power or discretion in regard to it. He cannot set it aside, or in any respect modify it. His only remaining judicial duty is to determine the amount of costs to which the prevailing party is entitled and add the same to the verdict. This was done by the justice, and the amount entered by him in his docket, under the entry of the verdict. The law made a judgment for this amount the only one that could be rendered by the justice. He had no discretion or power to alter or vary it in any respect. His judicial functions in respect to the case were terminated. An entry, preceding the statement of this amount of judgment for plaintiff, would in no respect be the exercise of judicial power, but the performance of a mere ministerial act. To hold that the omission to make this entry rendered the entire proceedings in the action a nullity would be sacrificing substance to form, and giving too much weight to technicality. This entry might have been made by the justice at any time, and should, for the purpose of sustaining the proceedings, be regarded as made. In the exercise of judicial functions the case is entirely different. When the case is tried by the justice, without a jury, he is judicially to determine the amount of the recovery, and he must do this and make an entry thereof, as required by law, within the time fixed by statute for that purpose. After the expiration of this time, his judicial functions in respect to the matter cease, and he can do nothing further in the premises. (*Hall* v. *Tuttle,* 6 Hill, 38, and cases cited ; *Fish* v. *Emmerson,* 44 N. Y., 376.) The remaining inquiry is, whether at the time of the levy of the execution the ties in question were the property of the respondent or of Daniels, the execution debtor. The substance of the facts found and proved relating to this question was, that Daniels was, in 1861–2, in possession of certain land upon which there was growing hemlock timber suitable for railroad ties; that he made a verbal agreement with the respondent to cut, manufacture and

deliver to him 1,000 ties on the side of the railroad track for twelve cents each, the respondent to pay as the work progressed; that it was further agreed that the ties were to be the respondent's as soon as the trees were cut from the stump; that Daniels cut, hewed and hauled out upon the lands of a third person timber for about 800 ties, but the trees were not cut up, but long enough to make from two to five ties each; that the respondent paid Daniels from time to time upon the contract an amount nearly or quite equal to the price to be paid for 800 ties; that about the first of February, the respondent and Daniels were together where the timber had been drawn, and the latter pointed out the same to the former, and said, " here are your ties." The respondent said he wanted them inspected, and said something about culls. The respondent claims title, first, under the contract for the purchase and the payments made by him upon it; and second, upon the transaction between him and Daniels in February at the time Daniels pointed out the timber to him. His counsel claims that, inasmuch as the trees of which the ties were manufactured were in existence at the time the verbal contract was made, and were then the property of Daniels, he was at liberty to sell the ties upon such terms as he saw fit; and that, as the contract provided that the ties should be the property of the respondent as soon as the trees were cut, he became the owner of all the ties as soon as the same were cut, and cites *Van Hoozen* v. *Cory* (34 Barb., 10), *Conderman* v. *Smith* (41 id., 404), and other cases involving a similar principle in support of his position. In the first cited case it was held that the owner of a farm, stocked with cows, who leased the same, reserving a specified rent, the lease containing a provision that the cheese to be made from said cows should be his property until the rent was paid, became the owner of such cheese as soon as the same was manufactured, and continued such until payment of the rent. In this case will be found an examination of the authorities relating to the acquisition of property when it has a potential but not an actual existence. *Conderman* v. *Smith* involved a similar question,

and was decided upon the same principle. It will be seen that in these cases there was nothing whatever to be done by the parties subsequent to the making of the contract to identify the property embraced in it. It applied to and included all the cheese manufactured from the cows, irrespective of its quality, whether merchantable or not. There was to be no inspection or examination to determine what cheese answered the requirement of the contract. The difficulty, if any, in the cases was whether the contract was an absolute purchase of the cheese or was intended as a mere security for the payment of the rent, a question not involved in the present case. But in this case subsequent acts were to be done by the parties to identify the property to be transferred under the contract. The respondent made no purchase of the trees as they were from time to time cut. Had a quantity of trees after this been consumed by an accidental fire, Daniels could not have recovered their value of the respondent, nor the value of the ties that might otherwise have been manufactured therefrom. The respondent was not bound to take all the ties manufactured, but only such as were merchantable, and suitable for the purpose intended. The ties were to be examined to ascertain this fact, and until so examined and accepted by the repondent, the title did not vest in him. *Comfort* v. *Kiersted* (26 Barb., 473, and cases cited), *Parker* v. *Schenck*, and other similar cases are cited by the Supreme Court as sustaining the title of the respondent. These cases involved the question, whether the contracts were within the statute of frauds, and therefore void, and did not involve the question of title to the property which was the subject of the contract. It is entirely clear that no title was acquired by the respondent by what occurred between him and Daniels in February. The referee has made no special finding of fact in regard to this matter. But, as the judgment has been affirmed by the Supreme Court, it is proper to examine the evidence, to ascertain the facts proved in support of the legal conclusion. I have adopted the testimony of the respondent upon this matter. From that it

appears that he did not accept of the ties at that time, but claimed that they should be inspected, spoke of culls, which, of course, he intended should be thrown out.    The title, being in Daniels at the time of the levy of the execution, was acquired by the purchaser at the sale, who transferred the same to the appellant.    He was, therefore, upon the facts found, entitled to recover for their conversion by the defendant.    The judgment of the Supreme and of the County Courts must be reversed and a new trial ordered, costs to abide event.

All concur

Judgment reversed.