Jonathan C. Hurd, Appellant, v. Josiah P. Cook, Respondent.

One W., being the owner of a tract of timber land, with a saw-mill thereon, entered into a contract with W. & S., by which the latter agreed to stock said mill with logs "at the agreed price of $2.50 per thousand for the green timber standing and $2.25 for all timber cut down and now cut into logs." The contract provided that "all the logs and lumber manufactured from said logs" W. & S. "are to have the title to and belong to them absolutely;" in consideration thereof S. & W. further agreed to advance on "the good and merchantable lumber" when sawed, $2 per thousand. The logs were to be sawed under the direction of W. & S. who were to receive $1.50 per thousand for drawing the merchantable lumber to the railroad or river; they were to sell the lumber and after deducting from the net proceeds of sale the amount due them, under the contract, they agreed to pay to W. the balance. W. & S. were to have the bark peeled from the logs cut by them, with the right to peel the logs already cut, if W. did not. In an action by plaintiff, as assignee of W. & S., to recover for the conversion of merchantable lumber cut from logs delivered under the contract, *held*, that it was competent for the parties to determine in whom the title should be during the various stages of the manufacture; that under and by the contract the title to all the logs, as soon at least as they were delivered at the mill, vested in W. & S.; that the provision as to the bark was not inconsistent with this interpretation; and that the fact that W. had an interest in the residue of the avails was entirely consistent with it.

*Stephens* v. *Santee* (49 N. Y., 35), distinguished.

Also, *held*, that defendant, appearing in the case as a mere trespasser, could not raise the objection that the transfer by W. & S. to plaintiff was in fraud of the rights of W.

W. & S. executed to plaintiff a bill of sale of 200,000 feet of lumber, "now at the mill and being made, delivered on the bank of Allegany river," and thereafter, and prior to the concurrence by defendant, certain piles were measured at the mill, marked and set apart. *Held*, that the transfer was complete and the title vested in plaintiff.

(Argued December 2, 1878; decided December 10, 1878.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover damages for the alleged conversion of a quantity of lumber.

On April 15, 1864, one Wainwright being the owner of a tract of timber land in Cattaraugus county, with a saw-mill thereon, entered into a contract with Wait & Sackrider, the material portions of which are as follows :

" That the said parties of the first part, Wait & Sackrider, in consideration of the sum hereinafter mentioned, agree to and with said Wainwright to stock said Wainwright's mill, in the town of Cold Spring, with hemlock logs for one year from May 1, 1874, together with the right of putting into said mill 2,000,000 feet of logs off of the land of said Wainwright, near and adjacent to said mill, at the agreed price of $2.50 per thousand for the green timber standing, and $2.2﹟ for all timber cut down and now cut into logs. And fo﹍ delivering of all lumber sawed from said logs at the railroa﹍ or on the bank of the Allegany river, the agreed price or $1.50 per thousand feet, all of the said logs to be cut as aforesaid, are to be measured by a person to be selected by said parties, by a log rule known as Scribner's rule, when delivered on the log-way, mill yard or other suitable place for measurement, and it is further agreed by and between the said parties that all the logs and lumber manufactured from said logs the said Wait & Sackrider are to have the title to and belong to them absolutely, and in consideration said Wait & Sackrider further agree to advance to said Wainwright two dollars per thousand feet when the same is sawed, in goods, wares and merchandise, the said two dollars per thousand to be advanced only on good and merchantable lumber. The said lumber to be culled at the mill, and no lumber to be drawn to the river which is not merchantable, the said lumber to be sawed the most suitable for the market, and according to the direction of Wait & Sackrider, * * * said Wainwright agrees to saw all the mill will cut during twelve hours each week day until said job is completed or all the logs are sawed that said Sackrider & Wait delivers to said mill. The cost of measuring said logs to be paid by the parties equally ; all lumber to be piled at least sixteen feet from the platform of said mill, * * * all bark peeled

off of timber cut down by Wait & Sackrider is agreed that the same belong to said Wait & Sackrider, and all green logs now cut they have the right to peel them if Wainwright does not, * * * Wait & Sackrider not to draw any lumber during the bad weather in spring and fall to the river or railroad . each kind of lumber sawed to be piled separate ; after all the lumber manufactured and all the logs sawed and the cost of selling and all other expenses connected with said sale are paid and the money received therefor, the said Sackrider & Wait are to retain the amount due to them for stocking and drawing the said lumber to the river and all advances made on said lumber, costs and expenses, and all the lumber brings over the above amount after such deduction, be paid by said Sackrider & Wait to said Wainwright."

Wait & Sackrider went to work under the contract, and the lumber in question was manufactured from the logs drawn by them to the mill.

On October 3, 1864, Wait & Sackrider executed and delivered to plaintiff an instrument of the body of which the following is a copy :

" For value received of Jonathan C. Hurd, we hereby sell, assign and transfer to said Hurd 200,000 feet of hemlock lumber (now at the mill and being made), delivered on the bank of Allegany river, at the agreed price of six dollars per thousand."

After this and before the conversion by defendant plaintiff's agent went to the mill, where there were fifteen piles of assorted merchantable lumber, manufactured out of the logs so drawn, which were measured or estimated and figured up 189,640 feet, at which plaintiff agreed with Wait & Sackrider to take them; they were marked with pencil and set apart as plaintiff's lumber.

Further facts appear in the opinion.

*J. V. Goodwill*, for appellant. The title to the logs and the lumber manufactured from them vested in plaintiff upon the execution of the agreement. (*Stephens* v. *Santee*, 49 N. Y., 35;

*Van Hoozen* v. *Cory*, 34 Barb., 10; *Conderman* v. *Smith*, 41 id., 404.)  The lumber being identified as that "now at the mill" and the intent being to pass title it became plaintiff's upon execution of the bill of sale.  (*Bacon* v. *Gilman*, 58 N. Y., 656; *Terry* v. *Wheeler*, 25 id., 520; *Bradley* v. *Wheeler*, 44 id., 495; *Russell* v. *Carrington*, 42 id., 118; *Kimberly* v. *Patchin*, 19 id., 330; *Olyphant* v. *Baker*, 5 Denio, 379; *Dexter* v. *Bevins*, 42 Barb., 576; *Rodee* v. *Wade*, 47 id., 53; *Hyde* v. *Lathrop*, 3 Keyes, 597.)  The title to the lumber not manufactured at the time of the sale passed as soon as it was sawed and identified.  (*Conderman* v. *Smith*, 41 Barb., 402; *Dexter* v. *Bevins*, 42 id., 573; *Comfort* v. *Kiersted*, 26 id., 472.)

*H. C. Day*, for respondent.

HAND, J.  Applying to the present case the test of the court below, as stated in its opinion in *Sackrider* v. *Cook*, as to the transfer of the title, and their order would still be wrong.  It was error to reverse the judgment upon the report of the referee here, even assuming, as was done in the other action, that title passed to Sackrider & Wait only in the merchantable lumber, and not in that, until after it was sawed and culled.  The property claimed by the plaintiff was lumber, and lumber only ; it was merchantable lumber, as appears clearly enough from the evidence, and the fact, even although not specifically ,found, should have been, if necessary, used to support the referee's decision.

But we are of the opinion that the construction given by the court below to the contract between Wainwright and Sackrider & Wait was erroneous, and that by that contract title to all the logs, even before their manufacture, was vested in the latter, at the latest, as soon as they were delivered on the logways or millyards.

The contract is inartificially drawn, and not in all respects perfectly intelligible ; but the one thing in it, which seems to us to have been clearly intended and to have been made

most distinct of all, is that Sackrider & Wait are to have the absolute title to all the logs, as soon as they are delivered. The contract is as specific upon this point as upon anything. It says expressly : "All the logs, etc.,   *   *   *   the said Wait & Sackrider are to have the title to and belong to them absolutely," and in consideration of this, they agree to make certain advances to Wainwright upon the lumber as soon as sawed.

There certainly is no rule of law to prevent this transfer of title taking effect according to the stipulation of the parties ; and there is nothing, in my judgment, in any other part of the contract, in the least, inconsistent with such result. Wainwright is to have the bark on the logs already cut, if he peels it ; otherwise Wait & Sackrider are to have the right to peel it, and they are to have the bark peeled from the logs cut by them. This may indicate that the bark was regarded as something separate and distinct from the logs, and not necessarily passing with them, and is not at all repugnant to the vesting of the title to the logs on delivery.

The stipulation that Sackrider & Wait are to retain the amount due them for stocking the mill and drawing the lumber to the river, and all their advances, out of the sales by them. so far from being inconsistent with title to the logs in them. tends to show that they, and they alone, have the right to sell their product, and hence inferentially had the title thereto

The contract seems to have contemplated that Sackrider & Wait should cut and draw to Wainwright's mill the logs, for which service they were to have $2.50 per thousand for those cut and drawn, and $2.25 for those only drawn ; the logs were then to be sawn by Wainwright, under the direction of Sackrider & Wait, and they were then to advance to Wainwright two dollars per thousand on the merchantable lumber. Sackrider & Wait were to receive in addition $1.50 per thousand for drawing the merchantable lumber to the railroad or river. They were to sell the lumber, and retaining their price for cutting and hauling logs, their advances, and anything due for hauling, were to pay to Wainwright the

balance. In connection with such an operation, it was proper that the parties should determine in whom should be the title to the property during the various stages of manufacture. This they have done explicitly; and the fact that Wainwright had an interest in the residue of the avails of the lumber after sale (which sufficiently accounts for the stipulation as to drawing in bad weather, etc.), is in entire harmony with the vesting of the legal title in the property in Sackrider & Wait, during the entire process of its conversion into lumber.

The case is easily distinguishable from *Stephens* v. *Santee*, (49 N. Y., 35.) In that case, according to the statement of GROVER, J., the owner of land sold 1,000 ties to the defendant, at twelve cents a piece, which such *owner* was to cut and deliver; and the ties were to be inspected, and the defendant to take only such as were merchantable. There was a verbal stipulation that the title to the ties — necessarily the 1,000 merchantable ones, and no other, — was to vest in the defendant, as soon as the timber was cut. This court held, in favor of creditors of the owner, that title did not pass, nevertheless, until the ties were inspected and culled, and those merchantable selected, because, of necessity, they could not be ascertained before that time. The court expressly distinguishes the case from those where the title to all the property, irrespective of selection, was to pass. It would have been like the present, if the agreement had provided that all the timber cut was to belong to the defendant, and not merely the merchantable *ties* to be made from such timber, and which could not be ascertained until after they had become merchantable ties. The owner of the land had both possession and title until the ties were culled. Here Wait & Sackrider were to take possession of all the logs, and expressly to have the title to them, and all the lumber made from them. Their advances were not to exceed two dollars a thousand upon the merchantable lumber, and they were to draw only that grade to the river; but these provisions did not affect their control over all the products. It merely

regulated the accounting for the proceeds after the lumber was sold.

The counsel for the respondent admits that Sackrider & Wait had a lien upon the lumber for the amount of their claims, and the court below hold that by the provision of the contract they had title to the lumber, "and such title to the logs, as was necessary to secure that end." As the defendant appears in this case as a mere intruder and wrong-doer, either of these possessory rights would probably be sufficient to support this action against him; but we have thought it more satisfactory to construe definitely the contract.

The respondent insists that, even conceding title in Sack-rider & Wait, the evidence does not show that it ever passed to the plaintiff; and that to give effect to the attempted transfer to him for a debt due from Sackrider & Wait, would be in fraud of Wainwright's rights. To raise the last objection does not lie in the defendant's mouth; but, as there is no evidence that the plaintiff is not solvent, or that the lumber was fraudulently sold, it is impossible to see what reason Wainwright would have to complain of the trans-action, if he were before the court.

He has apparently received the stipulated advances and will be entitled to all the avails of the lumber, over and above Sackrider & Wait's contract claims; and if the latter do not draw it to the river, his position is by so much the better, as they cannot claim the $1.50 for drawing. If Sackrider & Wait should claim that allowance, in settlement with Wainwright, because of their terms of sale to the plain-tiff, although now testifying that the lumber was worth the same price, and was accepted by him at the mill, it will be for Wainwright then to dispute such claim.

It is unnecessary to decide whether the bill of sale given to the plaintiff, on the third of October, passed the title to all or any of the lumber now claimed, or was but an executory contract of sale; for the transfer to the plaintiff of the 189,640 feet, previous to its conversion by the defendant,

was complete ; and the contract, so far as executory with regard to it, was executed, by its identification, measuring, marking, and setting apart, in pursuance thereof in November, 1874, Palmer acting for the plaintiff and accepting this lumber from Sackrider & Wait. (*Terry* v. *Wheeler*, 25 N. Y., 520; *Bradley* v. *Wheeler*, 44 id., 495.)

The order of the General Term must be reversed, and the judgment upon the report of the referee affirmed, with costs.

. Order reversed and judgment accordingly.