GEORGE W. PRICE AND IRA L. PRICE, RESPONDENTS, *v.* EUGENE HEATH, APPELLANT.

*When the sorting and acceptance of an article is not a condition precedent to the passing of the title — one accused of a crime is presumed to be innocent.*

Upon the trial of this action, brought to recover damages for the conversion of a quantity of wagon hubs by the defendant, who claimed to own them as the assignee of a company to whom the plaintiffs had sold them, the plaintiffs claimed that by the terms of the contract the counting and sorting of the hubs was a condition precedent to an acceptance, and that as to the hubs not counted and sorted at the time the company failed the title had not passed. The only testimony which tended to prove this condition was that of the plaintiffs' agent who sold the hubs, who testified on his re-examination that the member of the company making the purchase said that he wanted good blocks, and that they should accept only good ones; that the witness said that they should expect them to throw out anything that was not good; that whenever they had a sufficient number of hubs drawn there to make it an object the hubs were to be sorted as the plaintiffs would want to draw money occasionally. This testimony was substantially denied by the defendant's witness.

*Held*, that the evidence was insufficient to authorize the court to submit to the jury the question as to whether or not the sorting and acceptance of the hubs by the defendant was a condition precedent to the passing of the title.

The plaintiffs claimed to recover upon the further ground that the company purchased the goods at a time when they were insolvent, without disclosing that fact and without intending to pay for them.

*Held*, that it was error to refuse to charge, upon the request of the defendant's counsel, that the charge of fraud against the assignors of the defendant was in the nature of a crime and could not be presumed, but must be established by evidence, and that the defendant was entitled, in the judicial consideration of the proofs, to the application of the rule that the presumptions of the law are in favor of the innocence of the person accused.

APPEAL from a judgment of the Yates County Court, entered on the verdict of a jury, and also from an order denying a motion for a new trial on the minutes.

*F. L. Brown* and *Edwin Hicks*, for the appellant.

*Calvin I. Huson*, for the respondents.

SMITH, P. J. :

Action for the conversion of a quantity of wagon hubs. The defendant claimed title as the assignee of the persons composing the firm known as the "Shortsville Wheel Company," which company, it is alleged, purchased the hubs of the plaintiffs. It was shown, by uncontradicted evidence, that about the 20th of November, 1884, the plaintiffs, by their agent Green, contracted to sell and deliver wagon hubs to the company, at their place of business at Shortsville, at the price of five cents for the small hubs and eight cents for the large ones, and that between that date and the 1st day of April, 1885, the plaintiffs, from time to time, delivered hubs under said contract. It was also proved that the company made payments on account of said hubs from time to time, so that, at the close of the delivery, there was due to the plaintiffs a balance which, according to the testimony on the part of the defendant and the account kept in the books of the company, amounted to the sum of $129.34. The action was begun in a Justice's Court, where the plaintiffs recovered a verdict of $197.97. The case was appealed to the County Court and was retried there, resulting in a verdict for $152.70.

The contention of the respondents' counsel is, that the judgment

may be sustained upon two grounds: First. That by the terms of the contract, the counting and sorting of the hubs was a condition precedent to an acceptance, and that, as to the hubs not counted and sorted, no title passed. Second. That the purchase was fraudulent, by reason of the fact that the purchasers, knowing themselves to be hopelessly insolvent at the time, and that they could not pay for the property purchased, failed to disclose that fact to the vendors. The case was submitted to the jury by the county judge, in each of those aspects, and they rendered a general verdict for the plaintiffs in the amount above stated. Upon the first branch of the case the judge charged the jury, in substance, that if it was the intent of the parties to the contract that the hubs should be culled or sorted before their acceptance by the vendees, no title passed until the sorting was made, and that it was for the jury to say, from the evidence, whether such was the intent.

The appellant's counsel contends that there is no evidence in the case to warrant the finding of an agreement or intent that the sorting or counting of the hubs was to be a condition precedent to the vesting of the title in the vendees, and that the submission of that question to the jury was consequently erroneous. The point thus stated is raised by exceptions duly taken.

The only witnesses who testify to the terms of the contract are Green, the agent of the plaintiffs, called by them, and C. Heath and Jessup, two of the members of the company, called by the defendant. All these were present when the contract was made. Green, on his direct-examination, stated nothing about a contract. He testified merely to the fact of the plaintiffs' delivering hubs to the company, and their value. On his cross-examination, the fact was elicited that the hubs were delivered under a special contract of sale, at an agreed price; and he made a statement as to the terms of the contract, but said nothing about culling or sorting the hubs, until he was re-examined, when he testified that Heath said " he wanted good blocks; that some we had drawn there the year before had been a little soft in the center; they would sort the blocks. * * * That they should accept only good blocks. I said that we should expect them to throw out anything that was not good." * * * " I told him that as often as we had a sufficient number of hubs drawn there to make it an object, to sort them up; that we

should want to use money occasionally, as we would draw hubs. He agreed to that."

That testimony was substantially denied by Heath and Jessup, and each of them testified that nothing was said about sorting and accepting before the delivery should be complete and the title pass.

The plaintiffs also put in evidence an account kept by the book-keeper of the company, by which it appeared that he did not credit the plaintiffs on the books, with hubs delivered, until they had been sorted and counted and their number reported to him. No invoices of the hubs were furnished by the plaintiffs, and, for aught that appears, the company had no other way of ascertaining the number delivered, than by counting them after delivery.

We think the case is barren of evidence, to support the proposition that the hubs were to be sorted and counted as a condition precedent to the vesting of title. It is apparent from the testimony that the hubs were to be delivered to the company at its place of business before they were sorted. They were so delivered. The sorting and counting were to be done by the vendees merely to enable them to ascertain how many of the hubs they were to pay for. It is like the case of *Burrows* v. *Whitaker* (71 N. Y., 291), cited by appellant's counsel, where it was said : " It is very plain that the object of the culling and counting or measuring, was merely as a means of ascertaining the total value, at the rates agreed upon ; and hence the title became changed, without the entire lumber being culled, counted or measured."

The sorting and counting were to follow, and not precede, the delivery, and were to be performed by the vendee. Those features of the arrangement are conclusive upon the question, under the circumstances of the case. In *Macomber* v. *Parker* (13 Pick., 175), the law was thus laid down : " The general principle is, that where any operation of weight, measurement, counting or the like remains to be performed, in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable state, the contract is incomplete until such operation is performed. (Brown on Sales, 44.) But where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery, and the weighing or measuring or counting afterwards would not be considered as any part of the contract of

sale, but would be taken to refer to the adjustment of the final settlement as to the price."

In *Russell* v. *Carrington* (42 N. Y., 118), LOTT, J., speaking for a majority of the court, cited, with approval, the statement in the prevailing opinion in the court below, that "the general rule on the subject is sufficiently expressed in the proposition, that when anything is to be done by the vendor in order to ascertain the value, quality or quantity of the goods sold, the delivery is not complete and the property does not pass to the vendee." And he went on to say that the rule referred to is not applicable "where the vendor is not to do the thing required." See, also, *Tyler* v. *Strang* (21 Barb,. 198, 206); *Bradley* v. *Wheeler* (44 N. Y., 495).

It is undoubtedly competent for the parties to provide by their agreement when the title shall pass, but here there is nothing in the contract, as shown by the testimony, to indicate an intent other than that the title should pass when the property was delivered. The cases cited by the respondents' counsel do not sustain his position. *Stephens* v. *Santee* (49 N. Y., 35) was decided upon the ground that by the contract the ties were to be inspected before delivery, and the vendee declined to accept them till they were inspected. Not having been inspected, it was held the title did not pass. See the comments on this case in *Hurd* v. *Cook* (75 N. Y., 459). *Bacon* v. *Gilman* (57 id., 656) is an authority against the respondents. In *Foot* v. *Marsh* (51 id., 288) the contract was held to be executory.

In what we have said, we do not refer to the culls or hubs that were rejected as defective. As to them, it is apparent the title was not intended to pass. If the defendant refused to deliver them, on a proper demand, he was doubtless liable for their value, but the recovery did not proceed upon that basis, and the verdict is for the whole amount, which the plaintiffs claim was unpaid upon the entire contract.

Upon the other branch of the case, above stated, the trial judge, in effect, submitted it to the jury to say whether the defendants' assignors purchased with the intent to get possession of the goods without designing to pay for them, or whether, being insolvent and knowing that fact, they had no reasonable hopes, and did not believe, that by continuing their business, they could retrieve their fortunes and pay for the goods purchased.

A careful review of the case fails to disclose to us any evidence of fraud. The contract was made about five months before the firm failed. No inquiries and no representations were made as to the financial condition of the firm. The plaintiffs had made sales to the firm previously, and may be presumed to have known something of their character and standing. There is no evidence that the members of the firm knew, at that time, that they were insolvent. They did not ask the plaintiffs for credit. They paid about $500 on the contract, in advance, on the day it was entered into. They made additional payments from time to time, as the property was delivered, and a balance of only about one-seventh of the entire purchase-price remained due at the close. In these circumstances, the bare fact that they found themselves insolvent, five months after the contract was made is not, of itself, evidence that they made the purchase with a fraudulent intent.

The defendant's counsel requested the judge to instruct the jury that the charge of fraud against the assignors of the defendant is of the nature of a crime and cannot be presumed, but must be established by evidence, and that the defendant is entitled, in the judicial consideration of the proofs, to the application of the rule that the presumptions of the law are in favor of the innocence of the person accused. The request was denied and the defendant's counsel excepted. What else was contained in the request than the elementary proposition that fraud is never to be presumed but must be proved? That proposition is applicable to civil as well as criminal trials. The judge was not asked to say that the fraud must be proved beyond all reasonable doubt, he was merely asked to charge that in order to find fraud there must be evidence sufficient to overcome the presumption of fairness and good faith. The refusal was error. There are other exceptions but they need not be considered.

For the reasons above stated we think the judgment should be reversed and a new trial ordered in the Yates County Court, costs to abide event.

BARKER, HAIGHT and BRADLEY, JJ., concurred.

Judgment reversed and new trial ordered, costs to abide event.