### BYAM v. HAMPTON.

*(Supreme Court, General Term, Fifth Department. June 20, 1890.)*

**1. SALE—WHEN TITLE PASSES.**

The owner of certain chattels agreed to "sell, assign, transfer, and set over unto" another all his right, title, and interest therein, in consideration of the purchaser's agreement to pay certain notes due by the seller. The chattels were delivered to, and remained in possession of, the purchaser. The seller repeatedly declared, and once testified in supplementary proceedings against the purchaser, that the chattels belonged to the latter, and the purchaser's financial reputation was good. *Held,*

that title passed at once, and the sale was not conditioned on the purchaser's payment of the notes, though, on sale of the chattels under execution against him, the seller claimed them.

**2.** TROVER AND CONVERSION—WHO MAY MAINTAIN.

One who has sold and delivered a chattel, reserving the privilege of repurchasing it within a specified time at the same price, but who has done nothing towards regaining it, has not sufficient interest to enable him to maintain trover against a sheriff who has sold it under execution against him, on the ground that it is exempt.

Appeal from Livingston county court.

Action by William J. Byam against Fremont Hampton. Complaint dismissed, and plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*William J. Byam, pro se.　Charles J. Bissell,* for respondent.

MACOMBER, J. This action was brought to recover the value of a portion of the plaintiff's law library, together with an iron safe, which the defendant, as sheriff, sold under an execution issued against the plaintiff's property. The value of the books so sold was $247.25. The plaintiff, being a practicing attorney and counselor at law, claimed these books as exempt under the statute, and forbade the sale upon that ground. Some time before the levy and sale already mentioned, the same books had been levied upon by the defendant under an execution issued against the property of one Guthrie. At that sale this plaintiff appeared, and claimed that the books did not belong to Guthrie, but to himself. The sheriff, however, proceeded to sell all the interest of Guthrie in the same. Guthrie's interest in or ownership of the books was derived under a written àgreement bearing date the 3d day of December, 1887, by which this plaintiff, in consideration of the agreement of Guthrie to pay two certain promissory notes—one of them being for $221.50, and the other for $750—upon which this plaintiff was the principal debtor, and of which Guthrie was indorser for the accommodation of the maker, "agreed to sell, assign, transfer, and set over unto the party of the second part [Guthrie] all the right, title, and interest which the party of the first part has in and to all the text-books in his law library, now stored in the office of the party of the second part hereto, and also all the following law reports in his said library," viz., (giving a catalogue of the same.)

It is now claimed by the plaintiff that this written instrument was merely an executory contract of sale, and that the transfer of the title of the books to Guthrie was conditioned upon the previous payment by the latter of the two promissory notes above mentioned. In this we think he is in error. The instrument itself bears inevitable evidence that it was the intention of the parties that the title to this property should pass to the purchaser. The property being already in the custody of the purchaser, there remained no act of delivery to be performed by the seller to make the transaction complete. The purchaser had the same rights under this agreement, and under this established fact of the actual possession of the property, as he would have had if actual and manual delivery accompanied the agreement. The instrument contains no clause showing that there was any retention by the plaintiff of title or the right to the possession of the property, until the payment of the two promissory notes had been made. The purchaser undertook, by his part of the agreement, not only to pay the promissory notes, but to indemnify and save harmless the maker from liability thereon. This was the consideration of the purchase. Whether this transaction is to be deemed an executed, or merely an executory, agreement is to be determined by the real intention of the parties, as manifested by the language of the agreement, and by the attending circumstances. *Decker* v. *Furniss,* 14 N. Y. 619; *Hurd* v. *Cook,* 75 N. Y. 454; *Terry* v. *Wheeler,* 25 N. Y. 525, and other cases cited in note; Benj. Sales, (3d Amer. Ed., notes by Kerr,) § 348. Had this agreement

been made, and the property not delivered thereunder, the question would be essentially different. We regard the fact of the continued and uninterrupted possession of this property by Guthrie as such a controlling circumstance as to render it unnecessary to consider the authorities bearing generally upon the question of what is and what is not an executed agreement. That this is the view entertained by the vendor up to the time when it became desirable for him to make a contradictory claim admits of no doubt. When examined in proceedings supplementary to execution, he testified that he had sold and delivered this property to Guthrie, and that he himself had no interest therein. Before the levy was made upon the property, he told Mr. Taylor, an attorney at law, that the property was not his, but Guthrie's. After the levy, he told the deputy-sheriff that the property belonged to Guthrie, and he had no interest in it. At the time of the sale, however, as he now claims, he had received further light upon the construction of the agreement, and put forth the claim that by its terms the title of the property did not pass to Guthrie, but remained in himself, until the two promissory notes were paid. These notes not having been paid, he insisted then, as now, that the title remained in himself. The case shows that Guthrie, at the time of making the agreement, was a banker in good standing, and of excellent financial reputation. The likelihood, therefore, of his failure to meet these notes could not have been in the mind of the plaintiff at the time of the execution of the agreement, and of the retention of the possession of the property by the purchaser. We are of the opinion, therefore, that the sale of this property under the execution issued against the property of Guthrie was valid, and transferred a clear title to the purchaser under such sale. This renders it unimportant to consider the rights of the parties as they were attempted to be adjusted by the sale of the plaintiff's interest in these books at a time subsequent to the sale thereof under the execution against Guthrie. At the sale of Guthrie's property, the plaintiff claimed to own these books; and, when his interest therein was offered for sale under an execution issued against his own property, he claimed them to be exempt under the statute, having, as he said, transferred all of the rest of his library to his wife. For aught that appears in the case, the sheriff would not have levied upon these books under the execution against Guthrie's property had not this plaintiff represented, both under oath and otherwise, that Guthrie was the true owner, and that he had no interest in the property. The courts are properly reluctant to effect the transfer of property by mere admissions; but at what time is a party permitted to recede from his representations? Even though the appellant is not technically estopped to assert this claim at the present time, yet it is but right that we insist that there shall be an end of representations designed to induce an affirmative action on the part of other persons.

The only remaining question relates to the iron safe, which was used for the keeping of the plaintiff's register and other valuables. On the testimony of the plaintiff himself, who alone is called as a witness on that question, he was not entitled to its exemption under the statute, (2 Rev. St. p. 367, § 22; 3 Rev. St., 6th Ed., p. 626, §§ 22, 25,) for the reason that he did not own it, or have the possession of it. He testified that he had transferred it to another person under an agreement that it should belong to that person who had paid the plaintiff therefor, with the privilege reserved to the plaintiff to regain the property within a limited time, and for the same price. At the time of making claim to exemption for the safe, it was not in the plaintiff's possession, but in the possession of the purchaser; and the plaintiff had done nothing towards purchasing or regaining possession of the same, even down to the time of the trial of this action. A mere equitable interest in personal property, where the legal title and the actual possession are in another, is not sufficient to enable a party to maintain trover for the conversion. The judgment should be affirmed. All concur.