[No. 5346.   Decided April 22, 1905.]

JOSEPH A. DENNIS, *Appellant, v.* MONTESANO NATIONAL BANK, *Respondent.*[1]

CONTRACTS—CONSTRUCTION OF WRITING—QUESTION FOR COURT. Where a written contract relative to the cutting of timber and the manufacture of shingles is not ambiguous, and expressly provides that the title to the timber and shingles shall remain in the party of the first part, it is the duty of the court to so construe it, and it is error to submit the construction of the contract to the jury.

[1]Reported in 80 Pac. 764.

APPEAL AND ERROR—REVIEW—NEW TRIAL—SUSTAINING ORDER ON
ANY GROUND. An order granting a new trial should be sustained
if correct on any ground, although it is not clear that the trial
court adopted such ground.

Appeal from an order of the superior court for Che-
halis county, Irwin J., entered May 18, 1904, setting
aside the verdict of a jury rendered in favor of the plain-
tiff, and granting a new trial. Affirmed.

*W. H. Abel,* for appellant.

*B. G. Cheney* and *J. B. Bridges,* for respondent.

HADLEY, J.—This is an appeal from an order granting
a new trial. The complaint avers that the plaintiff was,
on May 6, 1903, the owner and in the immediate posses-
sion of certain shingles, stored in the dry kiln and shed
of his mill; that on said date the defendant wrongfully
carried away and converted the shingles to its own use, to
the damage of the plaintiff in the sum of $3,000; for
which amount judgment is demanded. The answer denies
the averments of the complaint, and affirmatively alleges
that, on the 17th day of April, 1902, the plaintiff was the
owner of a certain shingle mill, and that on said date he
and the defendant entered into a written contract, of which
the following is a copy:

"THIS AGREEMENT, made and entered into this 17th day
of April, 1902, by and between Joseph A. Dennis, of
Montesano, Chehalis county, state of Washington, the par-
ty of the first part, and The Montesano National.Bank, of
the same place, the party of the second part, Witnesseth:
That for and in consideration of the sum of $2,849.12, to
him in hand paid by the party of the second part, the re-
ceipt of which is hereby acknowledged, and of future ad-
vances to be made by said party of the second part to the
said party of the first part, and of the mutual covenants
and agreements hereinafter specified, the said party of the

first part hereby agrees with the said party of the second part as follows, to wit:

"The party of the first part agrees to superintend the operation of the shingle mill situate on lot 4, section 7, township 17, west of the Willamette Meridian, Chehalis county, Washington, known as the Dennis Shingle Mill, as continually as possible during the year 1902. The party of the first part further agrees to use all moneys advanced, and to be advanced, for the purpose of supplying said mill with timber and in the payment of the expenses of the operation of the same. All of said timber and expenses to be paid by check drawn on the said party of the second part. That the said party of the first part shall keep all shingles, so manufactured by said mill, insured in an amount as near their full value as possible, the policies made payable in the event of loss to the said party of the second part. It is hereby expressly understood and agreed that all of the timber purchased, as aforesaid, and all of the shingles so manufactured therefrom, shall be and remain the absolute property of the said party of the second part, until all moneys advanced by the said party of the second part to the party of the first part shall have been fully paid and this agreement cancelled, and during the life of this agreement the said party of the second part shall have absolute control of the same, and that in purchasing said timber and in superintending the manufacture of said shingles the said party of the first part shall at all times act under the supervision of the said party of the second part. The said party of the first part further agrees to pay and discharge all liens or claims against said timber and shingles, so that at all times the same shall be free and clear of any and all claims of any third person or persons whatsoever. The said party of the second part agrees to furnish sufficient money, in addition to the amount hereinbefore specified, to purchase sufficient material to keep said mill in as continuous operation as possible, and to pay all the expenses of the operation of said mill, as soon as the same become due. It is further agreed that a settlement shall be had between the parties hereto

on or before the 1st day of January, 1903, and this agreement cancelled or continued in force at the option of the said party of the second part. It is further agreed that all moneys received for the sale of any of said shingles shall be paid to the party of the second part, and applied to the payment of the indebtedness secured hereby."

It is further alleged that the plaintiff began the operation of the shingle mill under said contract, and continued to so operate until January 1, 1903, when a settlement was had, and plaintiff was found to be indebted to defendant in a large amount, and that the defendant at that time exercised the option given it under the terms of the contract, and continued the same in force; that the plaintiff continued thereafter to operate the mill under the contract, until about May 1, 1903, and that, during all the time of said operation, defendant faithfully performed all the terms of the contract on its part to be performed, by advancing sufficient money to pay to keep the shingle mill constantly supplied with material, and to pay all expenses of operation; but that plaintiff failed to perform the terms of the contract required of him, by neglecting and refusing to use all money advanced to him by defendant for the purposes of supplying the mill with timber, and of paying operating expenses; that he also disposed of shingles manufactured under the terms of the contract, and failed to pay the proceeds thereof to the defendant; that he failed to keep the shingles insured, refused to operate the mill under the supervision of the defendant, permitted the shingles and timber to become charged with claims of third persons, and neglected to pay defendant the amount of his indebtedness to it. It is also alleged that the defendant is the absolute owner, and entitled to the possession, of all the timber purchased under the terms of the contract, and of all shingles manu-

factured therefrom, and that the same comprised all the timber and shingles in plaintiff's possession on May 6, 1903, and prior thereto; that by reason of the plaintiff's neglect to carry out the contract as aforesaid, the defendant, on or about said date, declared the contract at an end, and lawfully, and with plaintiff's consent, took into its possession all the shingles manufactured under the contract then remaining unsold. The reply put in issue the allegations of the answer, and a trial was had before a jury, which resulted in a verdict for plaintiff in the sum of $1,816.72. The defendant moved for a new trial, which was granted, and the plaintiff has appealed.

Appellant urges error upon two grounds: (1) That the court erred in considering the affidavits of jurors, and in refusing to strike the same; (2) the general ground that it was error to grant the new trial. We think it is unnecessary to discuss the first ground, since we believe it was not error to grant the new trial for other reasons. At the trial the court declined to construe the written contract, and refused to say whether, by its terms, the respondent became the owner of the timber and shingles, or the mere holder of a lien for its advancements. Those questions were submitted to the jury, and they were instructed, in effect, that they should determine the force of the written agreement. They were instructed that, if they found that appellant was to remain the owner of the shingles, and was also to retain their possession, then the respondent would have no right to take them from appellant's possession.

It was the duty of the court to construe the contract, and not to leave the jury to do it. We know of no reason why it shall not be construed according to its express terms, as the parties have made them. The terms are

in no sense ambiguous, and they need no explanatory evidence coming within the province of the jury. The language of the contract clearly and explicitly says that all the timber purchased under the contract, and all shingles manufactured therefrom, shall be and remain the absolute property of respondent; that the latter shall have absolute control of the same; and that appellant shall, at all times, act under the supervision of respondent. It is true, it is stated that the title shall remain in respondent until all moneys advanced by it have been fully paid, and the agreement cancelled; but that is not inconsistent with the idea that title shall rest in respondent until that time, and that what then remains shall be transferred to and become the property of appellant.

The contract in the case of *Hurd v. Cook*, 75 N. Y. 454, was essentially similar to the one at bar. Two persons, Wait and Sackrider, agreed to stock a sawmill with hemlock logs for one year, and they were also to have the privilege of putting into the mill two million feet of logs, from the lands of the mill owner. Certain prices for cutting and delivering logs to the mill, and for delivering lumber to transportation companies, were specified. Wait and Sackrider were also to make cash advancements to the mill owner from time to time. After deducting all expenses of logging, manufacturing, and selling, and the amount of the advancements so made, the balance was to be paid to the mill owner. The contract contained the following:

"And it is further agreed by and between the said parties that all the logs and lumber manufactured from said logs the said Wait & Sackrider are to have the title to and belong to them absolutely."

Suit was brought to recover damages for conversion, as

appellant has sued respondent here. In construing the contract, the court said:

"In connection with such an operation, it was proper that the parties should determine in whom should be the title to the property during the various stages of manufacture. This they have done explicitly; and the fact that Wainwright had an interest in the residue of the avails of the lumber after sale (which sufficiently accounts for the stipulation as to drawing in bad weather, etc.), is in entire harmony with the vesting of the legal title in the property in Sackrider & Wait, during the entire process of its conversion into lumber."

It may also be as well said here, that it was proper for the parties to determine by their contract in whom the title to the timber and shingles should be, during the various stages of manufacture, and until sold in the market. Having clearly provided that the title should be in respondent, the court should have so construed the contract, and it was error to submit that question to the jury. It is not clear from the record that the court so construed the contract when it granted the new trial. But, in any event, the result was right, and we have discussed the subject in order that the question may not arise upon the new trial.

The order is affirmed.

MOUNT, C. J., FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.