THE FIRST NATIONAL BANK OF OTTUMWA V. RENO ET AL.

1. **Sale:** WHETHER COMPLETED OR NOT: LEVY ON PROPERTY BEFORE DELIVERY: NOTICE.  Whether the title to personal property which is the subject of a contract of sale, but which remains in the hands of the vendor, has passed to the vendee under the agreement, is a question of intent.  (See opinion for authorities.)  And where the memorandum of the contract, signed by the vendor, was as follows:  "For and in consideration * * * I hereby sell to said parties stock and grain on my place as follows:  * * *  the sale of said grain to be credited on my debt to them, and said hogs and grain held as their property until so sold and applied," *held* that the intention was clearly expressed that the title should at once pass to the vendee, and that there is no rule of law under which it could be defeated; (*Snyder v. Tibbals*, 32 Iowa, 447, distinguished;) and that the levy of an execution against the vendor on the property before its delivery, with notice of the contract, did not create any lien on the property.

2. **National Banks:** DEALING IN PERSONAL PROPERTY.  Conceding that national banks have no power to engage generally in the business of buying and selling personal property, they have the power to sell real

estate which they have lawfully acquired, and to take personal property in payment therefor.

ROTHROCK and SEEVERS, JJ., *dissenting*.

## *Appeal from Wapello Circuit Court.*

## TUESDAY, OCTOBER 25.

DEFENDANTS caused an execution, issued on a judgment held by them against J. B. Carman, to be levied on certain personal property. Plaintiff instituted this action for the recovery of the property, claiming it under an alleged purchase from Carman. The cause was tried to the court without the intervention of a jury, and judgment was entered for the defendants.

*Chambers & McElroy*, for appellant.

*M. B. Sparks, A. C. Steck* and *E. L. Burton*, for appellees.

REED, J.— Plaintiff sold and conveyed a tract of land to Carman, and agreed to accept the property in question in part payment of the price, and Carman executed and delivered the following memorandum as evidence of the contract:

1. SALE: whether completed or not: levy on property before delivery: notice.

"OTTUMWA, IOWA, November 1, 1885.

"For and in consideration of the conveyance of forty acres of land to me by W. B. Bonnifield, president, and W. A. McGrew, cashier, First National bank, I hereby sell to said parties stock and grain on my place as follows: Hogs, now on the place and to be purchased; ear-corn, 700 to 800 bushels, more or less; buckwheat, 200 bushels, more or less; oats, 250 bushels, more or less,— the sale of said grain to be credited on my debt to them, and said hogs and grain held as their property until sold and so applied. J. B. CARMAN."

It was proven on the trial that when the contract was entered into Carman had in his possession on his farm a quantity of ear-corn which he had raised; also a quantity which he had purchased,— the two lots being separate from

each other; and it was the quantity which he had purchased which was intended to be included in the contract. Also that he had but one lot, each, of oats and buckwheat, but the quantity of each was unknown. He also had a number of hogs, and before the levy was made he purchased others, and a number were added by natural increase. Those purchased were paid for by plaintiff, but he subsequently repaid to it the amount of money paid for them. The understanding was that the purchase included all the hogs then owned by him. Defendants had notice of the contract before the levy was made. Carman retained the property in his possession up to the time of the levy, which was made several months after the contract was entered into, and fed the hogs from the corn. The understanding appears to have been that he was to be credited for whatever amount should be realized for the hogs. Under that arrangement, he would have been compensated for the corn consumed by the hogs. The contract, then, had reference to specific property; but there was no delivery, and the price to be paid for it was dependent on two things, to be ascertained in the future, viz., the quantity and prices at which it would be sold.

The important question in the case is whether the transaction amounted to a completed sale of the property, or whether the contract remained executory. The question whether the title to personal property which is the subject of a contract has passed to the vendee under the agreement is one of intent. If there has been an actual delivery, and nothing remains to be done to ascertain the price or quality of the article, the strong presumption is that the intention was to pass the title. On the other hand, if the delivery has not been made, and something yet remains to be done in order to ascertain its quality or price, such as inspecting or weighing it, the presumption is equally strong that it was the intention that the ownership should remain in the vendor. But in neither case is the presumption conclusive. It would be competent for the parties to contract, in the one case, that the title should

remain in the vendor, notwithstanding the delivery, or, in the other, that it should pass to the vendee in advance of delivery. This view finds abundant support in the authorities. (*Hurd v. Cook*, 75 N. Y., 454; *Riddle v. Varnum*, 20 Pick., 280; *Merchants' National Bank of Cincinnati v. Bangs*, 102 Mass., 291; *Lingham v. Eggleston*, 27 Mich., 324; *Wilkinson v. Holiday*, 33 Mich., 386; *Bogy v. Rhodes*, 4 G. Greene, 133; Benj. Sales, (4th Ed.,) § 311; Blackb. Sales, 120.)

The contract in question clearly indicates an intention by the parties to make a present sale and transfer of the property. The language, "I hereby sell to said parties stock and grain," etc., and "said hogs and grain to be held as their property," etc., is not fairly susceptible of any other construction. Having clearly expressed that intention in their written contract, there is no rule of law under which it can be defeated. As between the parties, the title passed under the contract to plaintiff. And as defendants had notice of the contract before they caused the property to be seized, they are in no better condition than Carman would be if he were seeking to avoid the contract. The case is distinguishable from *Snyder v. Tibbals*, 32 Iowa, 447. The language of the contract in that case did not evidence an intention by the parties to pass the title to the property, but showed rather that they intended that the agreement should be executory.

II. The point is urged that the contract is one which plaintiff, under its character, is incapable of entering into, and hence it acquired no rights under the contract. It may be conceded that banking associations, organized under the national banking act, have no power to engage generally in the business of buying and selling personal property. They have power, however, under certain circumstances, to acquire and dispose of real estate. No question is made but that plaintiff lawfully acquired the real estate which it sold to Carman. If so, it had the right to dispose of it, and we know of no provision in the statute under

2. NATIONAL BANKS: dealing in personal property.

which it was organized which forbids it to receive property other than money in payment. The agreement to accept the property in question in payment was entered into at the same time that the contract for the sale of the land was made.

The judgment will be reversed, and the cause remanded.

REVERSED.

ROTHROCK and SEEVERS, JJ., *dissenting.*