PEYCKE BROS., Appellees, v. JOHN T. HAZEN, Sheriff, Appellant.

Attachment: PREVIOUS SALE OF GOODS: RETENTION OF POSSESSION BY OWNER. The property of a wholesale fruit dealer was transferred to a creditor by an unrecorded written instrument, and a portion of it actually delivered. It was agreed that the balance should remain in the custody of the creditor's agent, to whom keys to the building were delivered. In his temporary absence, employes of the debtor, ignorant of the transaction, opened the place of business, and thereafter the sheriff levied an attachment for another creditor on the remaining property. *Held*, there was no such retention of actual possession by the debtor as would support the attachment under Code, section 2906.

*Appeal from Pottawattamie District Court.*—HON. W. I. SMITH, Judge.

THURSDAY, FEBRUARY 12, 1903.

ACTION to recover the value of certain personal property belonging to plaintiffs, alleged to have been converted by defendant, acting as sheriff, under a writ of attachment in favor of the Council Bluffs Grape Growers' Shipping Association. Judgment for plaintiffs on directed verdict. Defendant appeals.—*Affirmed.*

*Flickinger Bros.* and *John J. Hess* for appellant.

*Chas. M. Harl* for appellees.

McClain, J.—The property in controversy consisted of certain office furniture and fixtures, lumber, and materials for banana boxes, which had been the property of the firm of Marcus, Marks & Co., engaged in the business of wholesale dealers in fruit at Council Bluffs; the business at Council Bluffs, however, being carried on by employes of the firm, who had entire control of the premises in which it was conducted. On the 1st day of November, 1895, the firm of Marcus, Marks & Co. being indebted to plaintiffs, doing business in Omaha, one of the plaintiffs came to Council Bluffs, and a sale of the entire property of Marcus, Marks & Co., employed in their business at Council Bluffs, including the property above described, as well as horses, wagons, and fruit, was made by that firm, represented by one of its members, to the plaintiffs, in consideration of previous indebtedness, which sale was evidenced by a short memorandum, not acknowledged or recorded. The transaction was concluded about eleven o'clock at night, and it was agreed between the parties that the firm of Marcus, Marks & Co. would, early the next morning, assist one Krug, who was to act for plaintiffs, in loading the fruit into the wagons, and hauling it by means of the horses to Omaha for sale on the market, and that Krug should retain possession of the remainder of the property for plaintiffs. There were oral words used at that time between the member representing the firm of Marcus, Marks & Co. and the member of the plaintiff firm indicating a present intention to transfer possession and ownership of all the property to the plaintiff firm, and the keys of the buildings in which the property was located were delivered to Krug for plaintiffs. The next morning, about five o'clock, the wagons were loaded as agreed the previous evening, and the horses were hitched thereto; and this portion of the property was transferred to Omaha, and is not involved in the present controversy. Krug, on leaving the premises

before breakfast, locked up the buildings, but, on returning later, found them in the possession of the sheriff, who had levied on the remaining property under a writ of attachment sued out by the Grape Growers' Shipping Association.   With reference to this levy, it appears that, soon after Krug left the premises, the employes who had been in charge for the firm of Marcus, Marks & Co., and who had keys, opened up the place of business as usual; and at about half past seven o'clock the sheriff appeared and levied upon the property, taking possession thereof. The question is whether there had been such retention of possession by Marcus, Marks & Co. as to render the sale to plaintiffs void, as against the attachment, under the provisions of Code, section 2906.   It is to be noticed that, by the language of the statute, it is the retention of actual possession by the vendor, without the recording of a written instrument evidencing the sale, which renders the transaction invalid as to the subsequent levy of an attachment, and that while, in many of the cases decided by this court, the question is made to turn on "change of possession," yet these words are not found in the statute; and the question we have before us is, therefore, not to what extent there had been a manual act of transfer of the property from the vendor to the vendee, but whether at the time of the levy the vendors still retained the possession which had previously been in them as owners of the property.   In the case of *Pope v. Cheney*, 68 Iowa, 563, it is said that   "All articles of personal property cannot be subject to the dominion and control of the owners in the same manner and to the same extent.   Those articles of great bulk, or to some extent immovable in their nature, cannot be held in possession and under control like smaller things, which may be readily moved, or over which their owner may have the power to exercise absolute personal possession."   And in that case the court lays down the rule that "when the owner exercises the control of a thing,

in the manner and to the extent usual in cases of property
of like character, and holds possession over it to the extent
to which it is capable of being possessed, according to the
ordinary manner of using and handling such things, it is
to be regarded as in his legal possession." There can be
no doubt, we think, in this case, that plaintiffs took and
were exercising all the possession and control of the prop-
erty in question which they could reasonably take and
exercise at the time the transfer was made, and that Krug
continued to keep possession and exercise control for plain-
tiffs as far as any other owner could be reasonably expected, ·
under the circumstances, to take and exercise possession
and control over such property. If Krug had remained on
the premises he would have had the full and complete
authority to exclude therefrom the employes of Marcus,
Marks & Co. The fact that Krug temporarily absented
himself, having the keys to the building, and, as he had
reason to suppose, the exclusive control thereof, would not,
we think, prevent his possession being continuous and
effective, notwithstanding the fact that the employes of
Marcus, Marks & Co. in good faith entered the premises,
mistakenly supposing that they had the authority to con-
tinue to conduct therein the business of their employers.
Counsel for appellant rely on the case of *Wessels v. Mc-
Cann*, 85 Iowa, 424, but in that case it appears that there
was no delivery, actual or symbolical, of the personal
property in question to the vendee. It is well settled
that, as to the property not reasonably capable of immedi-
ate manual control, a symbolical delivery, by turning over
the keys of the premises in which the property is kept, or
similar acts, with intention that the vendee shall exercise,
from that time on the control over the property of which
it is capable, will be sufficient, under the provisions of our
statute, or statutes similar to ours, as to recording. *Deere
v. Needles*, 65 Iowa, 101; *Frank v. Levi*, 110 Iowa, 267;
*McKibbin v. Martin*, 64 Pa. 352 (3 Am. Rep. 588); *Gaar*

v. *Hund*, 92 Ill. 315; *Wright v. Tetlow*, 99 Mass. 397; *Lathrop v. Clayton*, 45 Minn. 124 (47 N. W. Rep. 544); Bump on Fraudulent Conveyances (4th Ed.) section 1451. We reach the conclusion that the evidence justified the court in directing a verdict for the plaintiffs, and the judgment thereon is AFFIRMED.