DYSART SAVINGS BANK, Appellee, v. PHILIP WEINSTEIN and DAN LALLY, Intervener, Appellants.

Sales: CHANGE OF POSSESSION: STATUTE. The statute providing that a sale or mortgage of personal property, the actual possession of which is retained by the vendor or mortgagor, shall be invalid as to existing creditors without notice, contemplates that such retained possession shall be real, positive and certain, and not that which is theoretical or constructive only. But this does not require that the property be actually moved from the place in which it was situated at the time of the sale or pledge, especially where the same is stored upon premises not in the possession or control of either of the parties, and is of such a char-

acter as to be incapable of delivery in the ordinary sense of passing a thing from one to another, as a large mass of scrap iron located on a railroad right of way. In such a case any act which amounts to symbolical delivery or surrender of control over the property is sufficient delivery of possession.

**Same:** BILL OF SALE: DESCRIPTION. A recorded bill of sale given by a pledgee after default of the pledgor, describing the property as eighty-five tons of iron, more or less, now upon railroad land in a certain town and now owned by the vendor and in his possession at such place, is not so indefinite as to location as to mislead or confuse one examining the record; and mention of the pledgee as owner is not a fatal misdescription.

*Appeal from Tama District Court.*—HON. C. B. BRADSHAW, Judge.

WEDNESDAY, JULY 5, 1911.

THE opinion states the case. Judgment *reversed,* and cause *remanded.*

*Struble & Stiger,* for appellants.

*Thomas & Thomas,* for appellee.

WEAVER, J.—The defendant, Weinstein, became indebted to the plaintiff bank and absconded. Thereafter said plaintiff sued out an attachment for the collection of its claim, and caused the same to be levied on a large mass of scrap iron lying upon the railroad right of way in the town of Dysart on the theory that said iron was the property of Weinstein, and subject to levy at the suit of his creditors. Soon after said levy, Dan Lally intervened in the attachment proceeding, claiming to be the owner of the iron from a date prior to the levy of the writ, and asking that said levy be discharged. In explanation of his claim of ownership Lally alleged that prior to said levy and prior to the beginning of the attachment suit Wein-

stein pledged said iron to the First National Bank of Dysart to secure the payment of an indebtedness to said bank, and, having defaulted in said payment, the bank proceeded, as it lawfully might, to sell the said pledged property, and did, in fact, sell the same to said intervener, in evidence of which transaction said bank then and there made and delivered to the intervener a bill of sale of said iron. The instrument thus pleaded was executed and acknowledged on June 8, 1909, five days before the filing of the petition in the attachment case. To this intervention the plaintiff appeared and answered in denial. The issue was tried to the court, which found that there having been no change in the possession of the iron as required by Code, section 2906, the intervener's claim must be held subject to the lien of the attachment and dismissed the petition of intervention. The correctness of this holding is the single question for our consideration.

It appears to us that the trial court erred in the assumption that the iron was in the possession, actual or apparent, of the defendant, Weinstein, at the time of the attachment. According to plaintiff's own showing, the iron was piled upon the railroad right of way and Weinstein had absconded. The statute upon which the court based its finding provides that "no sale or mortgage of personal property where the vendor or mortgagor retains actual possession thereof is, valid against existing creditors without notice," etc. Code, section 2906. The record does not disclose "actual possession" in Weinstein. He had, as we have seen absconded. The iron was upon the premises of a third party. More than nine months prior to that date he had in writing pledged the iron to the First National Bank, and in the same writing provided that, until his debt to said bank was paid, all future sales and shipments therefrom should be made in the name of the bank's president, Oscar Casey, and the record shows that all subsequent shipments were

1. SALES: change of possession: statute.

in fact so made, though Weinstein added to the pile from time to time. The "actual possession" to which the statute refers is real possession, that which is true, positive, and certain, and not that which is theoretical or constructive only. *King v. Wallace,* 78 Iowa, 221.

Again, delivery or change of possession does not necessarily mean that the property shall be moved from the place or situs in which it exists at the time when it is sold, mortgaged, or pledged. The change in possession, especially where the property is being kept or stored upon premises which are not in the possession or control of the seller or mortgagor, may be such only as is reasonably practicable, considering the nature and character of the thing sold or mortgaged. *Pope v. Cheney,* 68 Iowa, 563; *Stewart v. Smith,* 60 Iowa, 278; *Thomas v. Hillhouse,* 17 Iowa, 67. The subject-matter of the transaction in this case was seventy-five tons of scrap iron lying in a heap upon the premises of the railroad company. It was manifestly incapable of delivery in the ordinary sense of passing it from hand to hand and any act which amounted to a symbolical delivery or surrender of the control of the property to the purchaser or pledgee was sufficient. As we have seen, Weinstein did surrender control of the mass by stipulating that the sales or shipments therefrom should be made by the bank or by its president, and it is also shown by the railway agent that such stipulation was observed and carried into effect in that all shipments were made in the name of that officer. Moreover, even if the delivery or change of possession were originally defective, if the First National Bank, acting upon the authority of the pledge given to it, thereafter assumed the possession and control of the property before attachment, its right to hold the same could not be divested by the levy. It appears without controversy that, before this action was begun, the bank, acting under the terms of the pledge, had sold the iron to Lally and given him a bill of sale thereof which had been

duly recorded. This feature of the case is given but slight attention in argument, but we assume from the statements of counsel that appellee denies any effective force to this transaction because of the alleged want of change of possession from Weinstein to the First National Bank, and because of insufficient description of the property in the bill of sale. For reasons already stated, we must hold the first objection not well taken.

Nor do we think the other point can be sustained. The description given in the bill is "eighty-five tons of iron, more or less, now upon the railroad land in Dysart, Tama County, Iowa, now owned by us and in our possession at the above described place being all of the iron owned by us and located at the above described place." The location of the property is not so indefinitely described as to mislead or confuse any candid person examining the record, and the mention of the bank as "owner" is not a fatal misdescription, if, indeed, it be a misdescription at all. The effect of the pledge was to give to the pledgee at least a special property in the iron, and, being authorized to sell the same and pass the title to the purchaser, it was in a very just sense owner. We see no way in which the judgment below can be affirmed.

2. SAME: bill of sale: description.

Counsel suggest that the action being at law the finding of the court must be given the effect of a jury verdict, and this is true. But a verdict which is without evidence to sustain it will be set aside on appeal, and this, we think, is the condition of the record before us. The precedents relied upon by the appellee are not in point. In each of the cases referred to the mortgagor or seller was in the actual possession and control of the property in question. The utmost to which any of them go in the direction of plaintiff's position is to hold that the possession of an employee acting under the orders of his employer is in legal sense the possession of the latter. All this may be

admitted without affecting the rule which we apply in the case at bar. See, also, as bearing more or less directly on the questions here discussed, *Brown v. Wade,* 42 Iowa, 650; *Bank v. Studeman,* 74 Iowa, 104; *Rosenfeld v. United States,* 66 Fed. 303 (13 C. C. A. 450); *Shindler v. Houston,* 1 Denio (N. Y.) 48; *Ingalls v. Herrick,* 108 Mass. 351 (11 Am. Rep. 360); *Parry v. Libbey,* 166 Mass. 112 (44 N. E. 124); *Barker v. Bank,* 30 Ill. App. 591; *Tunell v. Larson,* 39 Minn. 269 (39 N. W. 628); *Lathrop v. Clayton,* 45 Minn. 124 (47 N. W. 544).

It follows that the judgment appealed from must be, and it is, reversed and cause remanded for further proceedings in harmony with this opinion.—*Reversed.*