FRANK F. LATTA, Appellant, v. A. R. MENCHING, Appellee.

**SALES:** Requisites and Validity—Delivery—Intention Governs. Upon the sale of corn in a crib, the physical delivery or transfer of the corn is not essential, if it was the intention of the parties that the right of possession and control should pass to the purchaser, and that the sale should be regarded as completed.

**SALES:** Requisites and Validity—Executory Contracts—Identification of Goods. It is essential, in an executory contract of sale, that the materials sold be identified, and the contract is executory as long as anything remains to be done to identify the particular property which is the object of the contract. So held where corn in a crib, to be delivered in three months, was not identified, but was to be identified when hauled, by being selected from the mass of corn in a crib, and rotten corn was to be excepted.

*Appeal from Harrison District Court.*—J. B. ROCKAFELLOW,
Judge.

JULY 7, 1919.

ACTION for damages consequent on breach of contract.
Defendant tendered the return of money paid in excess of
the price of the corn taken. Jury was waived, and recovery
for damages was denied, and judgment entered for the
amount tendered. The plaintiff appeals.—*Affirmed.*

*Roadifer & Roadifer,* for appellant.

*H. L. Robertson* and *Paul E. Robertson,* for appellee.

LADD, C. J.—About April 11, 1917, the plaintiff called
on the defendant to assess his property, and, in the course
of their conversation, proposed to purchase his corn. After
some parley, the price was fixed at $1.25 per bushel; plain-
tiff was to haul the corn in July; and it was to be weighed
on Hanneman's scales. Plaintiff handed defendant a check
on the First National Bank of Missouri Valley, in words
following:

"Missouri Valley, Iowa, April 11, 1917, No. ———

"Pay to A. R. Menching, or order, $500.00

"Five Hundred no/100 Dollars,

"Part payment on corn at $1.25 per bushel to be weighed
on Hanneman's scales in Magnolia to be hauled in July.

"Frank F. Latta."

About 400 bushels of white corn were in a wire crib,
without cover, and about 1,000 bushels of yellow corn in a
board crib, with the ordinary roof. The corn in the wire
crib was to be first hauled.

The plaintiff testified that he had said to Menching,
when buying the corn, that he would take no rotten corn,
or that he had the right to throw out the corn he considered
not good. On the other hand, defendant testified that he

told plaintiff that he had to "take the corn the way it came."
Sometime in May, plaintiff hauled from the wire crib 153
bushels and 20 pounds of corn, and, in loading, sorted out
and left in one corner of the crib about a bushel of rotten
or defective corn, besides throwing some over to the hogs.
The plaintiff says that defendant argued that the former
ought to "take the rotten corn," to which plaintiff respond-
ed that "the agreement was that he was not to take any rot-
ten corn at that price." The defendant denied having in-
sisted on plaintiff's taking the rotten corn when hauling,
but admitted that he told him, at the time of making the
contract, that there was mouldy corn at the bottom and
side of the wire crib. The defendant covered this crib with
boards, but these seem not to have sheltered the corn en-
tirely from the rain.

It is to be observed that the contract was entered into
about three months before plaintiff was to haul the corn;
and, in view of this, the plaintiff's version of the contract,
that he was not to take the corn as it came
from the crib, but might reject the so-called
rotten ears, is the more reasonable. This
must have been the finding of the district
court; for otherwise, a different conclusion
must have been reached. Assuming, then, that the terms of
sale were as related by the plaintiff, we have the one in-
quiry, and that is: Was there a delivery of the corn at the
time of the contract? If so, plaintiff was entitled to the
corn, even though he did not haul it away in July, as agreed;
for the sale had been completed, and he had become the
owner. If, however, there was then no delivery of the corn,
the sale was executory, and title to the corn had not passed
to plaintiff, and he might not insist on performance after
the time agreed upon. See Tiedeman on Sales, Section 208.
There was no physical delivery or transfer of the corn from
the possession of one to that of the other. But this is not

1. SALES: requi-
sites and valid-
ity: delivery:
intention
governs.

essential, if the intention of the parties to the contract appears to have been that the right of possession and control passes to the purchaser, and the sale be regarded as completed.

In *First Nat. Bank v. Reno,* 73 Iowa 145, the contract purported to be a present sale, and the court, in the course of the decision, said:

"The question whether the title to personal property which is the subject of a contract has passed to the vendee under the agreement is one of intent. If there has been an actual delivery, and nothing remains to be done to ascertain the price or quality of the article, the strong presumption is that the intention was to pass the title. On the other hand, if the delivery has not been made, and something yet remains to be done in order to ascertain its quality or price, such as inspecting or weighing it, the presumption is equally strong that it was the intention that the ownership should remain in the vendor. But in neither case is the presumption conclusive. It would be competent for the parties to contract, in the one case, that the title should remain in the vendor, notwithstanding the delivery, or, in the other, that it should pass to the vendee in advance of delivery."

In *Welch v. Spies,* 103 Iowa 389, the sale in question was of not less than 1,600 nor more than 2,000 bushels of corn. There were 1,600 bushels in one crib which had not been opened, and, though corn had been taken from another crib, 700 bushels remained in it. These cribs burned, after the contract was entered into, and the suit was for the purchase price of the corn. Under the evidence, some of the corn in the latter crib was held to have been reserved for the use of others, and the sale of the corn in the unopened crib was held to have been completed, the conclusion appearing to rest on the statement of the buyer to the seller, when paying him $50 on the purchase price, "The money is yours

and the corn is mine,"—to which the purchaser assented.

See *Sempel v. Northwestern H. L. Co.*, 142 Iowa 586, and *Rhynas v. Keck*, 179 Iowa 422, in each of which the authorities were reviewed. In the latter case, the sale of 28 hogs was negotiated; and, in the words of the opinion, "nothing other than payment upon weighing and physical change of location was left to be done," and the sale, under the circumstances shown, was held to have been completed. The authorities seem well agreed that an essential to an executed contract of sale is that the materials sold be identified, and that a contract of sale is executory, as long as anything remains to be done to identify the particular property which is the object of the contract.

2. SALES: requisites and validity: executory contracts: identification of goods.

This rule was stated in *Courtright & Co. v. Leonard*, 11 Iowa 32, and has been followed ever since, the court there saying that:

"Where some act remains to be done in relation to the articles which are the subject of the sale, as weighing or measuring, or, as in this case, that of separating and setting them apart from the bulk, so that they may be distinguished and identified, the performance of such act is a prerequisite, and until it is performed, the property does not pass to the vendee."

Had the parties agreed that the corn should be taken from the wire crib as it came,—that is, regardless of quality,—and that, after removing all from that crib, the balance should be taken from the other crib, nothing would have been essential to be done other than weighing the corn to ascertain the quantity, and the payment of the remainder of the purchase price; and there would have been some basis for saying that the facts brought the case within the holding of *Rhynas v. Keck*, supra. But the evidence indicates affirmatively that the corn sold was not identified, but was to be identified when hauled, by being selected by plain-

tiff from the mass of corn in the cribs. The rains falling on the wire crib wet the corn, and, for all that appears, the corn, but little affected, if at all, when the contract was made, might so decay as to be rejected, when the time to haul came. Plaintiff, then, might reject corn practically sound at the time of the contract, if it appeared to be decayed when hauled. Something was to be done: that is, the good corn sorted from the rotten, including such as had become rotten after the making of the contract. Such separation was essential to the identification of that sold from the corn in bulk, and plainly indicates that the parties, in contracting, did not intend that possession of the corn should pass until it was hauled. Because of this, the trial court did not err in holding that the contract was executory, and that, as plaintiff did not haul the corn when agreed, there cannot be a recovery for breach of contract.—*Affirmed*.

WEAVER, GAYNOR, and STEVENS, JJ., concur.