PETER LIMBURG, Appellant, v. O. A. ONTJES, Appellee.

**SALES: Delivery—Acts Constituting.** Where there was an agreement in this state for the sale of *one* of two identically similar articles

situated in a foreign state, the act of the vendee, with the implied consent of the vendor, in going to the foreign state and taking possession of *one* of said two articles, constitutes a complete delivery.

*Appeal from Grundy District Court.*—GEORGE W. WOOD, Judge.

OCTOBER 25, 1923.

THE plaintiff sues at law to recover the price or value of an automobile alleged to have been sold by him to the defendant. There was a jury trial, with verdict and judgment for defendant, and plaintiff appeals.—*Reversed and remanded.*

*F. J. McGreevy,* for appellant.

*Willoughby, Strack & Sieverding* and *Mears & Lovejoy,* for appellee.

WEAVER, J.—The issue tried is a simple one; and, while there is a radical conflict of testimony concerning some material matters of fact, it cannot be said that the verdict returned by the jury is without support in the evidence. The one serious question raised by the appellant has reference to one of the instructions given to the jury by the court on its own motion. To understand the point of the criticism, it is necessary to refer briefly to the evidence. Plaintiff was a retail dealer in automobiles at Austinville, Iowa, and the defendant was a distributor or general agent for Buick cars in that territory. On March 18, 1918, the defendant took the plaintiff's order or contract for the purchase of three Buick cars, two of which were of identical pattern, known as Model E 35, each priced at $731.02. Plaintiff settled for these cars by giving his promissory note to a bank, and later paid it off. The cars so bought and sold were in storage at the Buick warehouse in Chicago, where plaintiff was expected to receive them and have them driven to his place of business in Austinville. There was also a fourth car at the Chicago house, which had been ordered or purchased by the defendant, Ontjes, and some arrangement was made by which two employees of plaintiff's, Niemeyer and Tjaden, with the defendant, Ontjes, and his employee, Kahl, should together go to Chicago and drive

the four cars back to Iowa. After the sale of the three cars to plaintiff had been perfected, and before the party started for Chicago to bring them home, the defendant proposed or expressed the desire to plaintiff to take one of the two Model E 35 cars for himself. The fact to this extent is admitted by defendant, but, according to his story, the plaintiff did not agree to the proposal. On the other hand, plaintiff swears that he did agree to it. There was also evidence tending to show that, on the arrival at Chicago, defendant, with his employee, Kahl, took possession of the fourth car above mentioned, and one of the Model E 35 cars which had been ordered or purchased by plaintiff, and placed his chalk mark upon them. On the return trip to Iowa, defendant drove the car which we have designated "the fourth," and his employee, Kahl, drove the Model E 35 on which defendant had placed his chalk mark; while the other two were driven by plaintiff's men, Niemeyer and Tjaden. Soon after leaving Chicago, the members of the party became separated, the car driven by Kahl falling behind the others. On reaching Grundy Center, Kahl stored the car in a garage at that place for the night. Before morning, the garage, together with the car in question and others, was destroyed by fire. The question in dispute, as will readily be seen, is: "Who must bear the loss of the car Model E 35?" The answer to this inquiry depends, of course, upon the further question of the ownership of the car at the time of the loss. On this feature of the case, the court charged the jury as follows:

"In order to constitute a sale of the automobile in question, the plaintiff must have agreed to sell and transfer to the defendant the automobile in question at a fixed price, which price the defendant must have agreed to accept and pay for, exactly in accordance with the offer of sale made by the plaintiff. A sale of the automobile in question would not be complete, and the title and ownership would not pass, by a mere agreement of sale, unless or until the automobile sold had been separated and set apart under an agreement between the parties; and the parties must have agreed upon a certain particular car, which was separated and set apart and the possession thereof taken by the defendant, with the intention of claiming ownership and exercising the right of ownership of the car, and this under an

agreement between the parties. If you find that the plaintiff has established all of these propositions by a preponderance of the credible evidence, you should find for the plaintiff; but if you find from the evidence that the plaintiff has failed to establish any one of the propositions herein set forth, by a preponderance of the credible evidence, then you should find for the defendant.''

The criticism made upon this charge is that it tends to mislead the jury into the understanding that the agreement between the parties, if one was made, would not effect a sale until the parties had designated the particular one of the two cars of the same model, and separated, set apart, and made an actual physical or manual delivery of the possession.

In view of the somewhat peculiar situation presented by the conceded facts, we think that the instruction cannot be approved. At the time when defendant admits he proposed or requested that plaintiff let him have one of the Model E 35 cars, and when plaintiff swears an agreement to that effect was made, neither car had yet been actually delivered to plaintiff. Both cars were in storage for delivery in Chicago, and the agreement, if any, was made with reference to that fact. Defendant was about to go to Chicago with the party, after the cars. Plaintiff did not contemplate going, and did not go. So far as shown, the two Model E 35 cars were of the same pattern and exactly alike; and it is clear that, if an agreement to let defendant have a car was made, it was expected by the parties that defendant would take possession of one of them on his arrival in Chicago; and a possession so assumed would have all the essentials of a completed delivery of the one so taken. To accomplish such delivery, it was not necessary that plaintiff and defendant should go to Chicago together, and there physically separate and set apart a ''certain particular car'' as the subject of the sale; for, if a sale had been agreed upon, with the understanding that defendant should have one of the two cars of the same model which were to be taken from the Chicago warehouse, then his act in selecting and taking possession of one of said cars, pursuant to that understanding, was a sufficient setting apart and delivery to consummate the sale, and the jury should have been so charged. Actual manual change of possession is not necessar-

ily essential to delivery or passing of title, and this is especially true where the article which is the subject of the negotiation is not present, or is in the hands of a depositary or bailee. Delivery rests in the intention of the parties, rather than in any particular act on the part of either. See *Gloucester Mut. Fish. Ins. Co. v. Hall,* 210 Mass. 332 (96 N. E. 679, Ann. Cas. 1912 D 348). If the jury in this case should find that, before defendant went to Chicago, he had an agreement with plaintiff by which the latter was to let him have one of the Model E 35 cars to be taken by him from the Chicago storehouse, then his subsequent act in taking possession of one of said cars in Chicago would operate as a completed delivery, and the plaintiff was thereby divested of the title. When the agreement was made (if one was made, as contended by plaintiff), nothing more was left for the plaintiff to do to perfect the transfer, and defendant would be within his rights in selecting and taking possession of one of the Model E 35 cars.

We do not, of course, undertake to find or say that any agreement for the sale or transfer of the car was, in fact, made, as claimed by the plaintiff. We go no further than to say that, under the evidence, it would have been proper for the jury to so find; and we therefore hold that the jury should have been instructed as to the rights of the parties, in the event of a finding in plaintiff's favor on that issue. On the other hand, if the jury should find for defendant, that plaintiff has failed to establish his claim that such an agreement was made, this would preclude any recovery in the latter's favor, and the question of delivery would become immaterial.

Other errors have been assigned and argued, but, as we view the record, none except the one we have discussed appears to be of a prejudicial character.

Because of the error above indicated, the judgment below is reversed, and cause remanded for new trial.—*Reversed and remanded.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.