W. T. MADDEN, Appellant, v. J. E. ELDRIDGE et al., Appellees.

No. 40266.

APRIL 14, 1930.

REHEARING DENIED SEPTEMBER 22, 1930.

*Chester J. Eller,* for appellant.

*Watson & Watson,* for appellees.

STEVENS, J.—Appellant, in the spring of 1929, was the owner of a quantity of wheat and oats raised by a tenant on

his farm in Warren County. The oats were stored in a silo, on premises leased by him to, and occupied by, one Jay Crabb. The appellee Eldridge claims that he purchased the grain of appellant, and that it was agreed and understood between them that he would haul the grain from the bins himself. Eldridge was then engaged in the trucking business in Indianola, and operating a truck line to Des Moines. Appellant denies that he ever sold the grain to Eldridge, and asserts that it was sold by one Orris Lester, a tenant, to W. A. Hanby, who lived at Indianola. Appellant concedes that, about the first of February, he had a conversation with Eldridge about selling the oats to him, and that, since Eldridge desired, before purchasing, to see the grain, the parties started to go to the Crabb premises for that purpose. It was stormy, and on the way they met Lester, the tenant, near a sawmill, and he promised to bring a sample of the grain to Eldridge. This he did, the same evening. Lester claims that he notified Eldridge, the following morning, that he had sold the grain to Hanby. Eldridge claims that he purchased the grain of appellant, and that it .was agreed between them that he would haul the same to Indianola or Des Moines. One of the reasons assigned by Eldridge for desiring the grain was that he wanted to keep his trucks busy.

The decisive question in the case is almost wholly one of fact. Eldridge testified that, after receiving notice from Lester that he had sold the grain to Hanby, he called appellant over the telephone, and told him that Lester thought he could get a cent more per bushel for the wheat; that appellant replied that Eldridge could have the grain at the price previously discussed; and that he desired it removed as early as possible. Following this conversation, two loads of the oats were hauled by Eldridge. He was then notified not to haul any more of the grain. He testified that, upon receiving this notice, he again called appellant over the telephone, and was informed by him that "he had purchased the grain, and that he was going to get it." Shortly thereafter, appellant went to Indianola, and a conference was held, at which Eldridge, Orris Lester, Hanby, Jay Crabb, and one Dean Cue were present. Lester had no interest in the oats, but appears to have had some in the wheat. Cue testified that he heard the conversation at the restaurant during which Eldridge claimed that he had bought the grain,

and that appellant, in effect, admitted that he had sold it to him. At the same time, Lester claimed to have sold it to Hanby. Crabb testified that the oats in controversy were stored in a silo on the farm rented by him of appellant; that he went to Des Moines, and informed Madden that Eldridge was moving the oats, and demanded payment for the rent claimed to be due him for the use of the silo. According to the testimony of this witness, appellant promised to go to Indianola the next morning, and during the conversation, appellant said that: "If they are moving the oats, I will come down and see about the rent of the silo." No settlement was had at the conference in Indianola. Both Eldridge and Hanby persisted in their respective contentions that they had purchased the grain. Some of the witnesses testified that appellant proposed to "flip a coin," to determine who should have the grain, and that Eldridge refused to settle the controversy in that way. Eldridge also testified that, during the conference, appellant, in the presence of the other witnesses, admitted that he had sold the grain to him. Manifestly, the question of fact is close. Appellant emphatically denied the sale, and Eldridge as emphatically affirmed his claim. Eldridge is corroborated to a considerable extent by the witnesses Cue and Crabb.

The trial court found that Eldridge purchased the oats, and that he had suffered damages by reason of being denied the right to remove the oats at the rate of 6 cents per bushel, or a total of $70. This sum being deducted from the agreed value of the two loads hauled by Eldridge, there was found to be a balance of $68.79 due appellant, for which judgment was entered against appellee Eldridge. Appellee Watson has no interest in the controversy.

It is by no means easy to determine the exact right of this controversy as to the facts. The preponderance of the testimony, in our opinion, sustains the claim of appellee Eldridge. Therefore, the finding of the court on the evidence has our approval. This result must follow, whether the issue be treated as one at law or in equity.

There remains, however, the claim of appellant that the alleged oral contract is unenforcible, under the statute of frauds. The court found that there was a failure of proof as to the wheat, and only the oats are involved on this appeal. As already

stated, the oats had been segregated, and were stored in a silo on the premises occupied by the witness Crabb. On the subject of delivery, Eldridge testified as follows:

"A. At the time we were down at the farm, or at the saw-mill, we talked about the price, which was 92 cents for the wheat and 35 cents for the oats; and Mr. Madden asked that I see Orris that evening as to what we thought we ought to do about it.

"Q. Where was the grain to be delivered at that price? Where was the delivery to be made, with reference to the price? A. I was to go and get the grain out of the bins. Q. It was to be delivered to you in the bins? A. Yes, sir. Q. Was anything said as to when it would be moved? A. He wanted it to be moved as quickly as possible, as he needed the money."

No part of the purchase price was paid, nor was there a physical delivery of any part of the grain. This was not absolutely essential to the passing of title. Both delivery and the passing of the title must be determined by the intent of the parties at the time of the transaction. *Van Drimmelen v. Converse,* 190 Iowa 1350; *Latta v. Menching,* 186 Iowa 975; *First Nat. Bank v. Cook,* 171 Iowa 41.

The subject-matter of the oral contract was segregated from all other grain in the silo, and, according to the testimony of Eldridge, it was to be hauled by him immediately. This claim is strengthened by the fact that he did go upon the premises and remove 398 bushels of oats. This, it is claimed by Eldridge, was immediately after the oral contract was entered into. Under the authorities cited, it must be held that there was a delivery of the oats to Eldridge. No other questions, except the matter of costs, are discussed by counsel. The court divided them equally between the parties. There was a partial recovery on the counterclaim, and this division of the costs would seem to be equitable. It follows that the judgment must be, and it is, affirmed.—*Affirmed.*

MORLING, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.