J. H. COWNIE, a copartnership, Appellant, v. LOCAL BOARD OF REVIEW OF CITY OF DES MOINES, Appellee.

No. 46587.

DECEMBER 12, 1944.

Wm. L. Hassett, of Des Moines, for appellant.

Herrick, Sloan & Langdon, of Des Moines, for appellee.

BLISS, J.—■ Since the intent of the contracting parties is the controlling factor in the determination of the issues of who was the owner and who was in possession of the personal property sold, on January 1, 1942, and since intent is a question of fact, we will set out the pertinent facts. It is to be kept in mind that the only relationship involved is that of the seller and the purchaser, uncomplicated by any third party claiming an interest in the property. There is no material dispute about any of the facts. The plaintiff for over fifty years had been engaged in the manufacturing and wholesaling of leather coats, gloves, etc., on its own property in Des Moines, Iowa. Sometime prior to September 1941, negotiations were begun between the plaintiff and the Kenosha Full Fashioned Mills, Inc., of Kenosha, Wisconsin, looking to a sale of plaintiff's business and property, excepting the real estate, book accounts, and certain other items, to the Kenosha company. Representatives of the latter spent some time in plaintiff's plant in September 1941, and on or prior to October 8, 1941, the seller and the purchaser reached a complete agreement as to the sale and all of its terms, and on the latter date a written contract evidencing the sale and its terms was executed by plaintiff as the seller and the Kenosha company as the purchaser. By its terms the seller agreed to sell and the purchaser agreed to buy:

"(a) The name, good will, trademarks, machinery, manufacturing equipment including office equipment, cutting tables, sewing machine tables, books, records and files and stationery of the seller * * * (b) The goods and merchandise of the seller, that is, its merchandise inventory consisting of raw materials, materials in process of manufacture and finished materials *as of the close of business on the 31st day of December, 1941.*" (Italics ours.)

The contract provided that the purchase price shall be computed as follows:

"$25,000.00 plus the seller's cost price of the said merchandise inventory taken as of the close of business on the said 31st day of December, 1941. In arriving at such cost price with respect to raw materials the same shall be taken at the actual acquisition

cost (price paid plus all transportation charges) to the seller; merchandise in process of manufacture or completely manufactured shall be computed at the actual acquisition cost to the seller of the raw material used to which shall be added the seller's cost of processing as determined and disclosed by the books of the seller for the processing of like merchandise during the year 1941; providing however, that the purchaser shall not be required under this contract to purchase such inventory in excess of $25,000.00 computed as above specified, nor shall the purchaser be required to purchase unusable scraps of raw materials."

Under the contract the purchase price was to be paid to the seller as follows:

"$25,000.00 upon the execution of this contract and shall pay the balance due as determined by the inventory taken at the close of business December 31st, 1941 (not, however, in excess of $25,000.00) on or before the 31st day of January, 1942, failing which the amount or amounts theretofore paid to the seller by the purchaser shall be forfeited as liquidated damages."

The first payment of $25,000 was made on October 8, 1941, on the execution of the contract.

The contract provided that the seller would not permit any waste or removal of the machinery or operational equipment while in its custody; that the "bulk sales" law would be complied with; that the sale did not include book accounts of the business remaining unpaid as of December 31, 1941, or the books and records necessary in their collection; "that from and after the execution of this contract the purchaser may install and keep on the business premises of the seller during all business hours its President and/or other officers or business representative for the purpose of familiarizing itself with the business of the seller;" that the purchaser will not contract any debts or liability upon the credit of the seller, and will advise all to whom it becomes indebted that it is the successor to the seller, and that it will so indicate on any stationery of the seller which it uses; that "in the event the purchaser sees fit to remove from the premises of the seller any of the machinery, equipment, merchandise or supplies, such removal shall be so conducted

with such care as to avoid undue damage to the said premises"; that the seller would not engage in a competing business prior to January 1, 1947. Just before Christmas 1941, the plaintiff mailed to the trade or the mills, tanners, etc., from whom it had purchased goods or with whom it had transacted business, a notice that it was discontinuing its business and would dissolve its partnership on December 31, 1941, and that it was not to be liable for any debts contracted in its name thereafter.

In the same envelopes in which these notices were mailed another communication signed by the purchaser was enclosed. It stated in substance that in supplementing the seller's letter it was glad to advise it had purchased the assets of the Cownie Company, except the book accounts and the real estate, which property it intended to remove to its home location in Kenosha, where it would continue to carry on the business as operated by the Cownie Company, under the name of the J. H. Cownie Company Division of the Kenosha Full Fashioned Mills, Inc.

After the execution of the contract on October 8, 1941, the seller continued to operate its business of manufacturing and selling about as it had before. Several officers or representatives of the buyer were about the plant during December 1941. The seller stopped manufacturing about December 20, 1941. It did no more cutting and finished all garments several days before December 31, 1941. Prior to that time they filled such orders as they could and such as they did not fill they turned over to their purchaser. As of December 31, 1941, they had some raw materials and some finished goods, but no partly processed materials. Plaintiff stopped purchasing materials early in the fall in order to cut the inventory down and to avoid small odd lots and pieces of small yardage. Mr. Schiltz, of the plaintiff, testified:

"There was no argument with Mr. Edge [president of purchaser] about unusable scraps because we did not have anything like that. The stock was very clean, and odds and ends towards the tail end of the season, we would work all these odds and ends so we wouldn't have to put them in the inventory. Enough to make a garment, we would make it up, try to get rid of it."

The inventory of the merchandise stock was made and com-

pleted in the last week of December 1941. This inventory included only the raw materials and manufactured goods and not the machinery or equipment. This inventory, computed in accord with the formula of the contract, at the close of business on December 31, 1941, was $20,500.

The contract did not provide when the purchaser would remove the purchased property to Kenosha, as it stated it was going to do in its letter to the trade. The terms of the contract, however, were such that all of the merchandise could not be removed until the inventory was completed at the close of business on December 31, 1941. There was testimony that the purchaser may have moved some of the property before December 31, 1941. There is testimony that the property had to be crated and packed and there was some delay in getting vans.

On December 15, 1941, plaintiff sold the building and ground where its business had been conducted to Harry Lang of St. Paul, Minnesota, excepting certain shelving, tables, benches, and other property belonging to the firm or its partners which had not been sold to the Kenosha company. Under this real-estate contract Lang was entitled to possession of the premises as of the close of business on December 31, 1941, but the seller was to have until January 31, 1942, to remove from the premises all trade fixtures, machinery, equipment, shelving, tables, cabinets, benches, and other personal property. This reservation was to enable the plaintiff and the Kenosha company to remove such property as belonged to either. On January 1, 1942, and thereafter until it was removed by the purchaser, sometime during that month, the personal property sold, except such as may have been removed previously by the purchaser, was in the building sold to Lang, and, as Mr. Schiltz testified, over objection, "it was in the possession of [Mr.] Edge" (president of the purchaser). Mr. Olson, who had been an employee of plaintiff, was an employee of the Kenosha company as of January 1, 1942, and thereafter, and carried keys to the building. The plaintiff leased the office of the premises of Lang, the purchaser of the building, for occupancy and use from and after December 31, 1941, in collecting its accounts. Mr. Schiltz testified:

"I was around the premises * * * after December 31, 1941. Mr. Edge had about a half dozen of his employees there after

January 1st. They were getting the stock in shape to move, finishing up the machines, packing and so on. Q. Did you or any of the partners of your firm or any employees of your firm fill any orders, make any shipment after December 31st? A. [over objection] Absolutely not. * * * The unpaid balance due under the contract figured up to $20,501 and some cents, but there were a number of items there was a dispute as to the price, and in order to close the matter I finally offered to settle on a flat $20,000.00 basis. Mr. Edge accepted it. I handled the dispute myself. The money was paid about the 7th or 8th of January, 1942 * * * the same day we finally settled that dispute * * * I think they moved some of the stuff before that day. * * * I supervised taking the inventory with several employees. * * * We never delivered a bill of sale to Mr. Edge. The only thing there is is this contract, nothing else. * * * I told Mr. Langdon that Kenosha Full Fashioned Mills did no business on the [Cownie] premises at 106 Third Street; but by that I meant manufacturing. He did fill a few orders from down there out of merchandise they had. *Mr. Edge or his representative from and after December 31st took over this inventory and filled orders out.* That included orders which had not been filled by us and any new orders that might arrive on the 2nd, 3rd or 4th,—all orders received after December 31st. *Neither Mr. Cownie nor any of the partners or employees supervised the operation in any manner after December 31st.*"

The assessment taken over the protest of the plaintiff and to which objection was made by it to the defendant was reported by the assessor as follows:

"Assessment Roll for 1942, District 2, No. 3454.
Des Moines, Polk County, Iowa, 4-6-1942
Name: J. M. Schiltz & J. H. Cownie
J. H. Cownie Co.                          Duplicate Mailed.
*Description of Personal Property.*
14. Furniture and Fixtures ..............$   250.00
15. Merchandise ($20,000 @ 60%)........ 12,000.00
26. Machinery & Equipment............... 1,500.00
                                         _____

Total Assessed Value of Personal Property..$13,750.00"

Plaintiff never signed nor in any way assented to this roll.

The trial court entered decree dismissing the appeal at plaintiff's cost, upon its findings of fact and conclusions of law which were, in substance: That the parties to the contract of sale intended the plaintiff should retain title and control over the property referred to in the assessment until the same was divided and any unusable scraps of raw materials eliminated from the purchase price, and until a full and complete check was made of the inventory to determine whether or not it amounted to more or less than the $25,000 limit in the contract; that from the conduct of the parties sufficient action was not taken to transfer possession of the personal property to the Kenosha company by January 1, 1942; and that it is the court's conclusion of law that the Cownie Company were "owners" of the property, and said company is liable for said assessment under the provisions of sections 6959 and 6964 of the 1939 Code of Iowa.

Section 6959 provides that personal property shall be listed and assessed each year in the name of the owner thereof on the first day of January.

Section 6964, in defining "owner," states:

"* * * persons having in their possession property belonging to another subject to taxation in the assessment district where said property is found, when the owner of the goods does not reside in the county, are, for the purpose of taxation, to be deemed the owners of the property in their possession."

We find no basis of fact in the record to sustain the trial court's findings of fact, and no basis of fact or law to sustain its conclusion of law. The trial court found that title did not pass from Cownie Company until the property was divided and the unusable scraps of raw material were eliminated. This finding misconceives the record as presented to the court. The contract itself specifically eliminated from the sale "unusable scraps of raw materials." There is no evidence that any such scraps were inventoried, or that there were any scraps in the stock of raw materials at the close of business on December 31, 1941. The undisputed testimony of Mr. Schiltz, set out herein, was: "There was no argument with Mr. Edge about unusable scraps *because we did not have anything like that.*" As he

further testified, such "odds and ends" as they had in the fall were made into garments. There was no separating, "dividing," or identification of goods necessary in this case. Plaintiff sold and the purchaser bought a specific body of goods, to wit, plaintiff's equipment as of October 8, 1941, and its stock of merchandise as it would be at the close of business on December 31, 1941. It is true that the stock varied from time to time between October 8th and December 31st, but on the latter date that stock, which the purchaser bargained for and bought and agreed to pay for, was a fixed body of goods of definitely ascertained character, amount, and selling price, needing nothing more to be done to it to make it deliverable. Differences of opinion very often arise in bulk sales of merchandise as to the value, cost, or price of specific items in the inventory. These are matters for adjustment. They may reduce the total purchase price, but they do not defeat the sale, or change the time of, or postpone the passing of title or ownership of the goods bought and sold.

Likewise, there is no merit whatsoever in the court's finding that there was no sale until it was determined that the inventory did not exceed the $25,000 limit of the contract. That provision was never a factor in the transaction. The inventory itself determined that the merchandise stock was less than that figure on December 31, 1941. The trial court conjectured so-called facts that the record discloses were never in the minds of the contracting parties.

We will refer first to some principles of law many times announced by this court and by courts generally, and to some statutory provisions, before discussing the trial court's conclusion of law.

I. Whether a sale was made, and whether and when the title passed, and whether the sale was executed or executory, are questions of intent, depending for their determination upon the wording of the contract, whether written or oral, and upon the conduct of the parties, and the surrounding circumstances. See, among the many decisions of this court so holding, Bishop v. Starrett, 201 Iowa 493, 495, 207 N. W. 561; Allen v. Elmore, 121 Iowa 241–244, 96 N. W. 769; Welch v. Spies, 103 Iowa 389, 391–393, 72 N. W. 548; Thompson v. Frakes, 112 Iowa 585, 588,

84 N. W. 703; Clark v. Shannon & Mott Co., 117 Iowa 645, 648, 91 N. W. 923; Wesco Supply Co. v. Town of Allerton, 156 Iowa 695, 698, 137 N. W. 1046; Smith & Son v. Bloom, 159 Iowa 592, 603, 604, 141 N. W. 32; Rhynas v. Keck, 179 Iowa 422, 432, 435, 161 N. W. 486; Madden v. Eldridge, 210 Iowa 938, 940, 941, 230 N. W. 371; Van Drimmelen v. Converse, 190 Iowa 1350–1353, 181 N. W. 699; Moats v. Strange Bros. Hide Co., 185 Iowa 356, 364–368, 170 N. W. 456; Rudy-Patrick Seed Co. v. Roseman, 234 Iowa 597, 601, 13 N. W. 2d 347, 349, 350.

Section 9947 of 1939 Iowa Code is:

"Property in specific goods passes when parties so intend. 1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. 2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

Section 9948 of the same Code is:

"Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: Rule 1. Where there is an unconditional contract to sell specific goods in a deliverable state the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such things be done. * * * Rule 4. Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

Code section 9970 provides that:

"Seller must deliver and buyer accept goods. It is the duty of the seller to deliver the goods and of the buyer to accept and pay for them, in accordance with the terms of the contract to sell or sale."

Code section 9971 provides that delivery of the goods and payment of the price shall be concurrent unless otherwise agreed upon, and section 9972 provides that the time, place, and manner of delivery may be as provided in the contract.

II. This court has many times stated, and decided, the law to be that where the entire lot or quantity of the subject matter of a sale is specified, ascertained, and identified, and is located in a place by itself, needing nothing further to be done to it to make it deliverable, and the sale thereof has been agreed upon, the title and ownership then passes from the seller to the buyer, even though the exact price to be paid must await the measuring, weighing, counting, or the otherwise ascertaining of the value or quantity of the property sold. Welch v. Spies, 103 Iowa 389, 391–393, 72 N. W. 548; Allen v. Elmore, 121 Iowa 241–244, 96 N. W. 769; Clark v. Shannon & Mott Co., 117 Iowa 645, 647, 648, 91 N. W. 923; Rhynas v. Keck, 179 Iowa 422, 432–435, 161 N. W. 486; Madden v. Eldridge, 210 Iowa 938, 940, 941, 230 N. W. 371; Moats v. Strange Bros. Hide Co., 185 Iowa 356, 364–368, 170 N. W. 456, all supra; Augustine v. McDowell, 120 Iowa 401, 404, 405, syllabus 3, 94 N. W. 918; Latta v. Menching, 186 Iowa 975, 979, 173 N. W. 229; Pope v. Cheney, 68 Iowa 563–567, 27 N. W. 754; Semple v. Northern Hardwood Lbr. Co., 142 Iowa 586, 591, 592, 121 N. W. 23; Harris v. Beebe, 144 Iowa 735, 737, 738, 123 N. W. 938.

III. Appellee argues that there was no delivery or change in the possession of this property because its physical situs was the same after December 31, 1941, as it was on and before that day. This fact is not controlling or of material importance on the issue of change of title or ownership of the property if it is in accord with the agreement or intention of the contracting parties. The plaintiff sold and the purchaser bought the stock of merchandise as it was on the close of business December 31, 1941, and agreed to pay for it on or before

January 31, 1942. What that stock was and the items thereof were definitely fixed on the last day of December. It was then the property of the purchaser. The delivery to it was final and complete in the building in which the stock was and had been located. The plaintiff had not agreed to deliver it to the Kenosha company at any other place. That company had possession, dominion, and control of the property, to do with as it pleased. It accepted the property on December 31, 1941, and had possession and control over it every day thereafter. It made sales from the stock on the premises. It packed, crated, and removed the remaining property to Kenosha. The plaintiff had no possession of the property after December 31st. It had no title to or ownership in the property thereafter. It did not retain naked title even as security. It exercised no dominion or supervision over the property. It did not own or have possession of the building in which the property was housed after December 31, 1941, although it rented office space therein.

We have repeatedly held that if the seller and buyer so agree or intend there may be a completed sale, delivery and acceptance, and passing of title, even though there be no physical change in the location of the property sold. Delivery may be either actual or constructive. -Aultman, Miller & Co. v. Nilson, 112 Iowa 634, 636, 84 N. W. 692; Barrows v. Harrison, 12 Iowa 588, 592–595; Clark v. Shannon & Mott Co., supra, 117 Iowa 645, 647, 648, 91 N. W. 923; Augustine v. McDowell, supra, 120 Iowa 401, 404, 405, syllabus 3, 94 N. W. 918; Hamilton v. Schlitz Brewing Co., 129 Iowa 172, 178, 179, 105 N. W. 438, 2 L. R. A., N. S., 1078; Cable Co. v. Miller, 162 Iowa 351, 356, 357, 143 N. W. 94; Madden v. Eldridge, supra, 210 Iowa 938, 940, 941, 230 N. W. 371; Latta v. Menching, supra, 186 Iowa 975, 977, 978, 173 N. W. 229; Hess v. Dicks, 181 Iowa 342–344, 164 N. W. 639; Hess v. Dicks, 192 Iowa 378, 383, 184 N. W. 742; Farmers Sav. Bk. v. Newton, 154 Iowa 49, 52, 134 N. W. 436; Gluck Co. v. Therme, 154 Iowa 201, 205, 206, 134 N. W. 438; Dysart Sav. Bk. v. Weinstein, 152 Iowa 260, 263, 132 N. W. 18; Limburg v. Ontjes, 196 Iowa 753, 756, 757, 195 N. W. 361; Peycke Bros. v. Hazen, 119 Iowa 641, 642–645, 93 N. W. 568; Brown v. Wade, 42 Iowa 647, 649–651; Pope v. Cheney, 68 Iowa

563–567, 27 N. W. 754, supra; Van Drimmelen v. Converse, supra, 190 Iowa 1350–1353, 181 N. W. 699; Moats v. Strange Bros. Hide Co., supra, 185 Iowa 356, 364–368, 170 N. W. 456.

**IV.** The above-noted cases and others of this court hold that what constitutes delivery depends largely upon the character and situation of the property. Nothing more should be required than what is usual, convenient, and proper. The intent to pass title to ascertained and identified personal property, with the right of possession, dominion, and control of it, is sufficient to establish a completed sale, or to take the contract out of the statute of frauds. Manual custody or actual possession is not always necessary. See, also, First Nat. Bk. v. Cook, 171 Iowa 41, 50, 153 N. W. 169; Western Silo Co. v. Gogerty, 187 Iowa 1, 3, 171 N. W. 176; Willey v. Backus, 52 Iowa 401, 402, 3 N. W. 431; First Nat. Bk. v. Reno, 73 Iowa 145, 147, 148, 34 N. W. 796.

**V.** The fact that the plaintiff under the contract of sale could have forfeited the down payment of the purchaser as liquidated damages had the latter not performed does not aid the appellee. Such contract provision did not prevent or postpone the passing of title, ownership, or possession of the property to the purchaser. We have repeatedly held that in conditional-sale contracts, as commonly known, though the naked title remains in the seller for the purpose of security, the possession, use, and ownership of the chattel is in the purchaser. He becomes the beneficial owner, the equitable owner, the substantial owner, immediately upon execution of the contract. Donnelly v. Mitchell, 119 Iowa 432, 436, 437, 93 N. W. 369; Hansen v. Kuhn, 226 Iowa 794, 797, 285 N. W. 249, 252; Universal Credit Co. v. Mamminga, 214 Iowa 1135–1139, 243 N. W. 513; Craddock v. Bickelhaupt, 227 Iowa 202, 205, 288 N. W. 109, 135 A. L. R. 474; State v. A Certain Automobile, 208 Iowa 794–796, 226 N. W. 48; Heyl v. Beadel, 229 Iowa 210, 215, 294 N. W. 335, 130 A. L. R. 994.

The contract involved in the appeal before us is not a conditional-sale contract. It is an unconditional sale. But other than the retention of title for security purposes, a conditional sale, in structure and contemplation, is not different from an absolute, unconditional sale. Hansen v. Kuhn, supra,

226 Iowa 794, 797, 798, 285 N. W. 249; Mercier v. Nashua Buick Co., 84 N. H. 59, 146 A. 165, 168. Under such a conditional sale the vendee, and not the seller, is liable for any tax against the chattel before repossession by the seller. Universal Credit Co. v. Mamminga, supra, 214 Iowa 1135, 243 N. W. 513. And this is true where the security is not by retention of title but by chattel mortgage. Arie v. Burnside, 182 Iowa 1107, 166 N. W. 376. The same rule applies to sales of real estate on contract retaining title in the seller. Meyer v. City of Dubuque, 49 Iowa 193; Miller v. Corey, 15 Iowa 166. Decisions from other jurisdictions hold the conditional vendee liable for the tax on the chattel, and are, State v. White Furniture Co., 206 Ala. 575, 90 So. 896; Bowls v. Oklahoma City, 24 Okla. 579, 104 P. 902, 24 L. R. A., N. S., 1299; San Diego County ex rel. Whelan v. Davis, 1 Cal. 2d 145, 33 P. 2d 827; Municipal Acceptance Corp. v. Canole, 342 Mo. 1170, 119 S. W. 2d 820; State v. J. I. Case Co., 189 Minn. 180, 248 N. W. 726; Massey-Harris Co. v. Lerum, 60 S. D. 12, 242 N. W. 597; Landis Machine Co. v. Omaha M. & T. Co., 142 Neb. 389, 6 N. W. 2d 380, 384, 9 N. W. 2d 198.

It is likewise true that in the case of an unconditional sale, such as is involved in this appeal, the purchaser, as the absolute owner of the property sold, owning it on January 1st, would be liable for the taxes assessed against it for that year, and not the seller who parted with his title, ownership, and possession prior to that date.

It is our judgment that the plaintiff was not liable for the taxes assessed against the property listed in the assessment roll, under either section 6959 or section 6964 of the 1939 Code of Iowa. The decree of the trial court is therefore reversed, and the cause is remanded to the trial court with directions to render and enter judgment and decree in conformity herewith. —Reversed and remanded.

All JUSTICES concur.